**STATE of Missouri, Plaintiff-Respondent,**

v.

**Donald Roy PAUL, Defendant-Appellant.**

**No. 33252.**

St. Louis Court of Appeals.

Missouri.

Jan. 21, 1969.

Hayes & Hayes, James P. Hayes, St. Louis, for appellant.

Thomas Shannon, Pros. Atty., St Louis, Gerald L. Birnbaum, Asst. Pros. Atty., for respondent.

CLEMENS, Commissioner.

A jury found defendant Donald Roy Paul guilty of driving a motor vehicle while in an intoxicated condition, and imposed a $500 fine. (Under § 564.440(1) [1] the offense is a misdemeanor.) Following the denial of his after-trial motion, allocution and judgment, the defendant appeals. We reverse and remand, holding that the trial court erred in admitting evidence of chemical tests.

The decisive issue concerns admissibility of a chemical analysis of defendant's breath made after testing with a Double Piston Cylinder (DPC) intoximeter. The defendant objected to this because he had requested but had been denied full information concerning the test, to which he was entitled under § 564.441, subdivision 4.

A simpler issue is defendant's challenge to sufficiency of the evidence. We recite it without reference to the intoximeter test. On the night of January 20–21, 1968, defendant spent several hours at a social hall, drinking (he said) three glasses of beer. About 2 a. m. he left the hall, driving his car on Gravois avenue. He rear-ended Thomas Parchomski's car which was stopped at an intersection traffic signal. Someone called the police and soon Patrolman Virgil Seib arrived. The two men described the defendant's gait, eyes and breath odor. Each then gave his opinion, without objection, that defendant was intoxicated. The evidence was sufficient. Compare State v. Ryan, Mo., 275 S.W.2d 350; and State v. Hatcher, 303 Mo. 13, 259 S.W. 467 [1, 9].

Before relating evidence of the DPC intoximeter test, we point out the pertinent statutory provisions. By § 564.440 it is a crime to operate a motor vehicle while intoxicated. By § 564.442 the amount of alcohol in a defendant's blood, as shown by chemical analysis of his breath, is admissible in evidence; a percentage of alcohol in excess of 0.15 is prima facie evidence of intoxication. Our primary concern is § 564.441. *Subdivision 1* declares a driver's "implied consent" to a chemical test. *Subdivision 2*, with our emphasis added, provides: "Chemical analysis of the person's breath, *to be considered valid* * * * shall be performed according to methods approved by the state division of health * * *." The division is authorized to approve methods and issue permits to qualified persons to conduct analyses. By *Subdivision 3* a person so tested is authorized to have an additional test made by a physician, or other qualified person, of his own choice. Defendant rests his appeal on *Subdivision 4*: "Upon the request of the person who submits to a chemical test at the request of a law enforcement officer, full information concerning the test shall be made available to him."

The intoximeter test evidence: When Patrolman Seib met the defendant at the collision site he explained the implied consent law and defendant agreed to the test. The officer drove defendant to a hospital for a physical examination to determine injury. About three hours after the collision defendant and Patrolman Seib arrived at police headquarters. There Corporal James Brady, a state-licensed "type three operator", gave defendant the DPC intoximeter test by having him blow through the machine into a chemically treated glass tube. The color of this sample indicated to Corporal Brady that defendant was intoxicated to some degree. Thereupon a second sample was taken, put into a "magnesium perchlorate tube", sealed, marked and stored. Three days later this tube was turned over to Mr. Robert Seto, the police department's chemist. Mr. Seto was a state-licensed "type one operator" authorized to make quantitative analyses of blood alcohol as shown by breath sampled with a DPC intoximeter.

This prosecution moved speedily. On January 23, 1968, Mr. Sidney Faber, associate prosecuting attorney for the City of

1. All section numbers refer to RSMo 1959, V.A.M.S.

St. Louis, filed the information. On February 8 the defendant pleaded not guilty. Then on March 11, three weeks before trial, defendant and his counsel wrote the St. Louis Police Department requesting "full information" concerning the chemical test of defendant's breath. They particularly asked about the type of equipment used, whether and when it had been inspected for accuracy and the result thereof, the names and qualifications of persons making the chemical analysis, the time defendant had been observed by the testing personnel, and a description of the procedure used in testing for alcoholic content of the defendant's blood. The police did not grant this request; instead, they referred it to Mr. Faber, who told them not to answer. This was contrary to § 564.441, subdivision 4.

At trial, chemist Seto told how a DPC intoximeter works. With a DPC intoximeter and its tubes (not the ones used here) he demonstrated the procedure in taking breath samples. Mr. Seto testified he "ran an analysis" on the defendant's breath sample. Asked the "number reading" on the test, he answered—over defendant's objection hereafter discussed—that it "showed a blood alcohol concentration of 0.24 percent * * * the subject was undoubtedly intoxicated."

The defendant objected to the admission of results of the chemical analysis on the ground he had requested but the police had denied him full information concerning the test—in violation of § 564.441, subdivision 4. If this objection was valid, the answer ("showed a blood alcohol concentration of 0.24 percent * * * the subject was undoubtedly intoxicated") was prejudicial. State v. Burchett, Mo., 302 S.W.2d 9[1].

As said, the decisive issue here is whether the State's failure to comply with subdivision 4 of § 564.441 barred the State from introducing evidence of the chemical analysis. We say it did.

This conclusion is based on our construction of § 564.441. Each of three approaches leads to that result. First, subdivision 4 is mandatory rather than directory and, hence, failure to comply with it nullifies compliance with other provisions of § 564.-441. Second, this follows our further conclusion that § 564.441 establishes a statutory substitute for the necessary common-law foundation for showing results of mechanical tests. Third, subdivision 4 favors the defendant, must be construed favorably to him, and must be harmonized with the other provisions of § 564.441.

*Mandatory Nature.* The mandatory or directory nature of a statute is determined from the legislative intent. This depends primarily on the purpose of the enactment.[2] When that purpose relates to the essence of a thing to be done, rather than to a matter of convenience, the provision is deemed mandatory.[3] Here, the purpose of subdivision 4 is clear: to give the accused a pretrial look at information available to the State to convict him—to enable the accused to intelligently exercise his right to challenge the test's accuracy.

A further factor should be considered: the effect of a different construction.[4] To hold that subdivision 4 is merely directory would render it meaningless to an accused, making the test information—be it favorable or unfavorable—available to an accused only at the State's pleasure.

And looking to the words used by the Legislature, we note that test information *shall* be made available to an accused. The word "may" is permissive only, but the word "shall" is mandatory.[5] This is

2. State ex rel. Hopkins v. Stemmons, Mo. App., 302 S.W.2d 51 [2].

3. State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S.W.2d 104 [6]; State ex rel. Hopkins v. Stemmons, supra, 302 S.W.2d l. c. 53 [2].

4. Elliott v. Hogan, Mo.App., 315 S.W.2d 840 [2].

5. State ex inf. McKittrick v. Wymore, 343 Mo. 98, 119 S.W.2d 941 [7], 119 A.L.R. 710; State ex rel. Hopkins v. Stemmons, supra, 302 S.W.2d l. c. 54 [4].

the general rule and no other intent appears here.

■ We hold that subdivision 4 is mandatory. Failure to follow a mandatory statute nullifies the proceeding to which it relates.[6] As we will show, subdivision 4, concerning disclosure of chemical tests, does relate to the procedure for making tests and introducing evidence of the results.

■ *Statutory Foundation.* But for § 564.441, results of chemical analyses would be admissible only after laying a foundation to show that the results are reliable. For example, to introduce the results of radar speed tests or X-ray photographs it must be shown that the device was trustworthy at the time used and that it was operated by a qualified person.[7] In State v. Becker, Mo.App., 429 S.W.2d 290 [2], this principle was applied to a "Breathalyzer" test for blood alcohol, the court finding that the evidence there did show the device was dependable and working properly, and that the operator was qualified to give the test.

Other state courts require this common-law foundation before admitting evidence of mechanical test results to show the quantity of alcohol in blood. Though requirements vary, they are but different measures used to meet the requirement that the results "can be relied on as a substantive fact."[8] Thus, in New Jersey and New York the basic foundation requirements for admitting results of a mechanical test for intoxication are that the equipment

was trustworthy and that the operator was qualified to give the test correctly.[9] The courts of Texas and Tennessee add a third requirement: where chemicals are used in a testing device it must be shown that the chemicals were compounded to the proper percentage.[10] The state of Washington also requires foundation evidence that the person had taken neither food nor drink soon before the test was given.[11]

We have recited the elements of these common-law foundation requirements because § 564.441 authorizes a statutory substitute. Subdivision 2 states that chemical analysis of the person's breath *to be considered valid* shall be performed according to methods approved by the state division of health, which is authorized to prescribe satisfactory techniques or methods. But in our case there was no evidence of what methods of testing had been prescribed by the department of health and, therefore, no way to determine whether the testing procedure used did meet those standards. We note that in New York where the statute says mechanical tests for blood alcohol shall be given in accordance with regulations established by the police department, there can be no conviction without evidence of what those standards were and that the test was conducted accordingly.[12]

■ *Statute Construed as a Whole.* We now reach the decisive question: Were the test results inadmissible because the State had violated subdivision 4 of § 564.441 by failing to disclose those results to the defendant? Subdivision 4 does not

6. State ex rel. Ellis v. Brown, supra, 33 S.W.2d 104 [2, 3]; 82 C.J.S. Statutes § 374.

7. State v. Graham, Mo.App., 322 S.W.2d 188 [15–22]; City of St. Louis v. Boecker, Mo.App. 370 S.W.2d 731 [2]; Quadlander v. Kansas City Public Service Co., 240 Mo.App. 1134, 224 S.W.2d 396 [6]; 29 Am.Jur.2d, Evidence § 823.

8. Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N.W.2d 627 [4]; 29 Am.Jur. 2d, Evidence § 823, n. 16.

9. State v. Johnson, 42 N.J. 146, 199 A.2d 809 [15]; People v. Davidson, 5 Misc.2d 699, 152 N.Y.S.2d 762 [3].

10. Hill v. State 158 Tex.Cr.R., 256 S.W. 2d 93 [6]; Fortune v. State, 197 Tenn. 691, 277 S.W.2d 381 [3].

11. State v. Baker, 56 Wash.2d 846, 355 P.2d 806 [1]; City of Bremerton v. Osborne, 66 Wash.2d 281, 401 P.2d 973.

12. People v. McFarren, 28 Misc.2d 320, 222 N.Y.S.2d 828 [1, 2].

say so but we construe that was the legislative intent. In this we have three entrenched principles of statutory construction to guide us. First, criminal statutes are construed strictly against the state and favorably to the accused, both as to the charge and the proof.[13] Second, parts of a criminal statute that benefit the accused—and subdivision 4 does just that—are liberally construed in an accused's favor.[14] Third, the several parts of a statute are construed together and all are to be harmonized as parts of a connected whole.[15]

▮ Guided by these principles we conclude that § 564.441 was adopted to establish a fixed standard for procuring admissible evidence of blood alcohol for use against persons operating automobiles while intoxicated.[16] In establishing this method the Legislature interposed three safeguards to protect the accused: by subdivision 2 it authorized the Division of Health to establish methods for testing; by subdivision 3 it authorized other tests to be made by qualified persons chosen by the accused; and by subdivision 4 the Legislature declared that the law enforcement agency making the test must make the results available to the accused.

▮ Our Legislature is not blind to the trend away from "the sporting theory of justice" and "trial by ambush", and toward trials conducted as openhanded searches for truth. We conclude that compliance with subdivision 4 of § 564.441 was meant to be a condition precedent for admission of evidence procured under subdivisions 1 and 2 thereof. That condition having been violated by the State, it was error to admit the State's evidence of chemical analysis.

13. State v. Dougherty, 358 Mo. 734, 216 S.W.2d 467 [2]; State v. Bartley, 304 Mo. 58, 263 S.W. 95 [1].

14. State v. Taylor, 345 Mo. 325, 133 S.W. 2d 336 [6]; Anthony v. Kaiser, 350 Mo. 748, 169 S.W.2d 47 [1].

15. Norberg v. Montgomery, 351 Mo. 180, 173 S.W.2d 387 [1]; Public Service Comm. v. Kansas City Power & Light

The judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of Clemens, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause remanded.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.

Co., 325 Mo. 1217, 31 S.W.2d 67 [1]; In re Tompkins' Estate, Mo., 341 S.W.2d 866 [7].

16. See 16 A.L.R.3d 748, § 3, Annotation, Construction and Application of Statutes Creating Presumption or Other Inference of Intoxication from Specified Percentages of Alcohol Present in System.