STATE of Missouri, Plaintiff-Respondent,

v.

Max HENDEL, Defendant-Appellant.

Nos. 33689, 33742.

St. Louis Court of Appeals, Missouri.

May 25, 1971.

---

Thomas I. Osborne, Pros. Atty., Montgomery County, Montgomery City, for plaintiff-respondent.

James G. Gregory, Montgomery City, for defendant-appellant.

CLEMENS, Commissioner.

Appeal from a driving-while-intoxicated conviction, based in part on evidence converting a Breathalyzer reading of percentage of alcohol by volume to its equivalent percentage of alcohol by weight. Before reaching the merits we must first untangle the procedural web spun by defendant's

1. All section numbers refer to RSMo 1969, V.A.M.S.

2. In civil cases judgment is rendered when the verdict is received or the court's finding is announced (Civil Rule 78.02,

**665**

premature appeal taken before final judgment.

In a trial before the court without a jury the court found defendant guilty of driving a motor vehicle while intoxicated. (§ 564.440 [1]). The court then stated defendant's punishment would be a fine of $300. There was neither allocution nor judgment at that time. In due time defendant filed a motion for new trial; it was overruled by operation of law on October 23, 1969 [2]. On October 30, 1969, before the trial court had formally pronounced judgment, defendant filed a notice of appeal, No. 33,689. Since that appeal was taken before final judgment it was premature and must be dismissed. State v. Chase, Mo., 415 S.W.2d 731.

Later, on January 7, 1970, in accordance with its previous findings, the trial court granted allocution and sentenced the defendant to pay a $300 fine. This was a final judgment. Six days later the defendant filed a second notice of appeal, No. 33,742. That appeal is properly before us for determination.

Two law officers stopped defendant on the night of July 17, 1968 when he was driving erratically on the streets of Wellsville, Montgomery County. They testified he smelled of alcohol, walked unsteadily, spoke in a slurred voice, and in their opinion was intoxicated. Defendant submitted to a chemical analysis by a Breathalyzer to determine the alcoholic content of his blood. It showed the percentage of alcohol in defendant's blood was *twenty-two* one-hundredths of one per cent *by volume*. An expert witness testified, over objection, that was equal to *twenty* one-hundredths of one per cent *by weight*.

Before reaching the critical issue concerning admissibility of this evidence

V.A.M.R.), but in criminal cases judgment is not rendered until the after-trial motion is disposed of and allocution has been granted. (Rules of Criminal Procedure, 27.20 and 27.04, V.A.M.R.).

we take up defendant's initial Point Relied On: "The use of the breathalyzer was not based on legislative standards, nor was its scientific accuracy established, nor were the methods for its use properly established." This is but a sweeping series of abstractions. The point ignores Civil Rule 83.05(a) (3) and (e), V.A.M.R., which prohibits abstractions and requires an appellant to challenge specific rulings of the trial court by stating precisely *wherein* and *why* those rulings are wrong. Counsel for the State complains he cannot respond intelligently to defendant's vague, sweeping challenge; we share his dilemma. As we pointed out in Lane v. Katt, Mo.App., 421 S.W.2d 544, a Point Relied On "should be used as a target pistol firing at a bull's-eye, not as a shotgun firing at clay pigeons." Our condemnation of defendant's Point Relied On parallels our ruling in DeCharia v. Fuhrmeister, Mo.App., 440 S. W.2d 182 [2–4].

Civil Rule 83.09 V.A.M.R. authorizes us to suspend a rule if justice so requires, but in the light of the State's evidence hereafter recited about the Breathalyzer's accuracy and methods of its use we cannot say justice requires appellate consideration of the faulty Point Relied On.

Defendant does not challenge the sufficiency of the State's evidence by the two arresting officers to show he was intoxicated. (Compare State v. Paul, Mo.App., 437 S.W.2d 98 [1]). Instead, he attacks the court's action in admitting expert testimony that although a Breathalyzer does measure percentage of alcohol in a person's blood by volume that percentage can be mathematically converted to the percentage of alcohol in blood by weight, as required by § 564.441. (See State v. Corsiglia, Mo.App., 435 S.W.2d 430.)

Section 564.441 says the chemical analysis must be performed by persons licensed by and according to methods approved by the State Division of Health. We relate the State's foundation evidence to support the admission of evidence that the chemical

analysis of defendant's blood showed intoxication.

Mr. Afton Ware was a graduate chemist employed in the Missouri State Highway Patrol's technical laboratory, licensed by the Division of Health to determine alcoholic content of blood from breath samples. He had tested the chemical ampoules used in the Highway Patrol's Breathalyzers and determined they met the specifications prescribed by the Breathalyzer's designer and manufacturer.

Trooper John H. Ford of the Highway Patrol had special training in testing Breathalyzers and was licensed by the Division of Health to supervise and instruct operators in their use. He made monthly inspections of every Breathalyzer in the F Troop area. Sixteen days before the defendant's Breathalyzer test Trooper Ford had inspected the device and established its accuracy by five prescribed testing routines.

Sergeant Jack Huffman, in charge of Breathalyzer testing in the Highway Patrol's Troop F area, had special training in testing and maintaining Breathalyzers and was licensed by the Division of Health to supervise and instruct operators in their use. Twelve days after the defendant's Breathalyzer test Sergeant Huffman tested the device and found it working normally.

Corporal Sterling Green of the Highway Patrol had been specially trained and licensed by the Division of Health to conduct Breathalyzer tests. The prescribed test included use of a seven-point checklist, introduced in evidence. Some 40 minutes after defendant's arrest Corporal Green tested his breath on the Breathalyzer in question, using the prescribed checklist. It recorded twenty-two hundredths of one per cent of alcohol in defendant's blood, computed by volume.

The State's critical witness was Don M. Long, a graduate chemist and 30-year employee in charge of the Division of Health's laboratory section. Together with

his chief, a Dr. Spurrier, who was director of the Division's central laboratories, he took part in selecting the Breathalyzer as the approved instrument for testing blood alcohol. This approval was based on consultation with the Breathalyzer's inventor, conduct of extensive tests on live subjects, and comparisons between the Breathalyzer readings and clinical analysis of blood drawn from the same persons. In approving the Breathalyzer the Division of Health determined its measurements of the percentage of alcohol in human blood was at least 99 per cent accurate, a scientifically acceptable standard.

Defendant's primary attack on admission of the Breathalyzer test result arises from the fact that it measures and records percentage of alcohol in a person's blood by volume, rather than by weight, as prescribed by § 564.442. Failure to show the percentage by weight brought reversals in State v. Corsiglia, Mo.App., 435 S.W.2d 430 [1], and State v. Carwile, Mo.App., 441 S.W.2d 763 [4]. Forewarned no doubt by those decisions, here the State brought in further evidence. Chemist Long testified there is a definite, scientific correlation between the percentage of alcohol in blood determined by volume and the percentage of alcohol determined by weight; that by considering the known specific gravity of human blood, (i. e., the weight of blood compared to the weight of an equal volume of water) the percentage of alcohol by volume can be mathematically converted to the percentage of alcohol by weight.[3] Over objection Mr. Long testified the defendant's Breathalyzer reading of twenty-two hundredths of one per cent of alcohol by volume is the mathematical equivalent of at least twenty hundredths of one per cent of alcohol by weight. If admissible, this was prima facie evidence under § 564.442 that defendant was intoxicated.

As said, defendant complains the trial court erred by admitting witness Don Long's testimony about this mathematical conversion because the percentage of alcohol by weight was "not evident from the machine nor based on any methods established by the State Department of Health."

■ Since the Breathalyzer did measure percentage of alcohol by volume the percentage of alcohol by weight was not evident on the Breathalyzer—at least not evident to a lay witness. But the percentage by weight was evident to Mr. Long because as a chemist he had the knowledge and experience to accurately translate the percentage by volume to its equivalent percentage by weight. This was a proper subject for an expert opinion, as expressed in the early case of Newmark v. Liverpool & London Fire & Life Ins. Co., 30 Mo. 160, 165: "The general rule is that persons of skill in any particular science or art may give their opinions, when the subject matter is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science or art as to require a course of previous habit or study in order to attain a knowledge of it. (Taylor on Evidence, vol. 2, § 1038.)" This is still good law. Housman v. Fiddyment, Mo., 421 S.W.2d 284 [1–4].

Here the correlation between the percentage of alcohol by volume and by weight, based on the known specific gravity of blood, was not something of general knowledge. But it was known to Mr. Long by virtue of his scientific knowledge and experience. Permitting him to give this testimony was hardly different than permitting a translator to testify what a word in a foreign language means in English or permitting a surveyor to explain the effect of magnetic declination on a compass reading. We hold the trial court properly admitted Mr. Long's interpretative answer.

---

3. Specific gravity of human blood varies from 1.048 to 1.066, and a Breathalyzer reading of .022 by volume indicates from .0206 to .0209 by weight.

**668**

Defendant further complains Mr. Long's opinion testimony was improper because not based on methods established by the Division of Health. He relies on § 564.-441, subd. 2, which says a chemical analysis of a person's breath "shall be performed according to methods approved by the state division of health by a person possessing a valid permit." The point will not stand. The analysis of defendant's blood was performed by Corporal Green, not by Mr. Long. Mr. Long merely interpreted that analysis for the court's benefit by giving the opinion which we have ruled was properly admitted.

Finding no error in any point properly preserved for review in appeal Number 33,742, the judgment is affirmed.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, appeal Number 33,689 is dismissed and the judgment in appeal Number 33,742 is affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.