**STATE of Missouri, Plaintiff-Respondent,**

v.

**J. D. SINCLAIR, Defendant-Appellant.**

No. 9085.

Springfield Court of Appeals, Missouri.

Dec. 17, 1971.

Lawrence H. Rost, New Madrid, for defendant-appellant.

Hal E. Hunter, Jr., Pros. Atty., New Madrid, for plaintiff-respondent.

HOGAN, Judge.

The defendant was convicted by a jury of the offense of driving while intoxicated as defined and denounced by § 564.440,[1] and his punishment was assessed at a fine of $100. He appeals, alleging as grounds for reversal that the result of a Breathalyzer test was erroneously and prejudicially received in evidence against him, because the State failed to show that the test was a method of chemical analysis approved by the Division of Health as required by the provisions of § 564.441. Though the point raised is narrow and rather technical, we think it is well taken. We reverse and remand.

The sufficiency of the evidence to sustain the conviction need not be considered on this appeal, peripheral issues will be disregarded, and therefore no extensive discussion of the background facts is necessary. The defendant was arrested after he was found driving a transport trailer truck, loaded with new Chevrolet automobiles, south in the dual northbound lane of Interstate Highway 55 in New Madrid County. A member of the State Highway Patrol was summoned. The trooper, having detected that there was an odor of alcoholic beverage on defendant's breath, and having observed that defendant's "eyes were a little shiny—watery," decided to administer a Breathalyzer test. The defendant was taken to the county jail at New Madrid, where the test was administered during the early morning hours on April 12, 1969. The trooper, Trooper Herb Campbell, obtained a reading of .19.

Upon trial of the case, the State called Trooper Campbell as a witness. He testified that when he first saw the defendant he could smell alcoholic beverage on his breath, "his speech was fair, but he didn't talk all that drunk, but it varies with people and you have some that talk with a thick tongue and some that don't and still . . . when you run them on the breatholyzer [sic] you find that you will be surprised at the reading you get." The trooper was asked about his qualification to administer the test, and he answered that he had been given instruction by a Highway Patrol instructor at Dexter, under the supervision of the Division of Health. The trooper was asked the result of the test, and the defendant thereupon objected on the ground that a proper foundation had not been laid for its introduction, and upon the ground that the test was given under a set of rules calling for a computation "that cannot be given here today." The witness was then asked, "Did

---

I. References to statutes and rules are to R.S.Mo. (1969), V.A.M.S. and V.A.M.R., unless otherwise noted.

you give the test as per the requirements of the Department of Health as filed in the Secretary of State's Office in Jefferson City?" The court inquired if defendant "was renewing his objection," counsel answered affirmatively, and the witness was permitted to answer that defendant "checked .19 on the breathlyzer [sic]." Asked if this was a measurement "by weight or by volume," Trooper Campbell answered, "As I took it there it was by volume—I believe it was." The trooper was then asked if he had subsequently been furnished with information by the Division of Health, filed with the Secretary of State, which enabled him to convert his finding of blood alcohol "by volume" to a finding "by weight." Defendant objected that such information was not on file on April 12, 1969, and that on that date the witness was not authorized to make any conversion. The State responded that "there is no difference in the procedure regardless of whether you are going by weight or volume," and asked the trial court to take notice of the filing of "the proper conversion tables for converting tests by volume to weight." The trial court announced, "I will do so." The witness then answered that "this [test] here would be converted back to—according to the latest [regulation] that just came out—19 per cent would be converted back to 17 per cent." Counsel for defense again objected generally. Trooper Campbell answered that the reading was "17 as of now. The Health Department says that all persons driving a motor vehicle that checks more than .15 of one per cent . . . is considered to be intoxicated, and [that is] all persons." Defendant did not object to this last statement. The trooper was permitted to say that there had been no change in the use of the Breathalyzer "whether you convert by weight or by volume."

On cross-examination, Trooper Campbell stated that he had a "Type 3" permit to operate a Breathalyzer. He "didn't think" that qualified him to explain the principle upon which that machine operated. He stated he was "not a chemist." Trooper Campbell repeated that he had run the test according to the rules "then on record," but "[t]here have been some additions, I think, on the reading that you get on the breathlyzer [sic]." Further interrogation followed, some of which we shall quote: "Q. Have there been any other additions? A. I don't know." "[W]hat was [on April 12, 1969] the definition of Breathanalyzer [sic]? A. I don't know whether it is in here or not. 'A device approved by the Division [of Health] which is capable of measuring directly or capturing the alcohol in the expired air in which the alcohol content of the blood can be calculated in milograms per one hundred milograms of blood.' Q. You did say milograms? A. That's right. Q. Was this particular work [sic] 'milograms' in the particular set of rules on April 12, 1960 [sic]? A. I believe it was 'milograms to milograms' . . .. Q. You are not sure? A. No, I am not sure." Further: "You did not have that book [2] at the time of the taking of the test? . . . A. We had a book—Q. Did you have this book? A. Not this particular book but a book that this replaced." The rest of the trooper's cross-examination is much the same.

Our so-called "implied consent" statute [3] permits the use of breath tests to determine the level of blood alcohol in prosecutions for violation of § 564.440, but it clearly delegates the power to determine and approve the method of testing and measurement to the Division of Health. Such is the simple language of § 564.441, par. 2, which specifically provides that: ". . . [c]hemical analysis of the per-

2. From which, apparently, the trooper was reading.

3. Originally L.1965, pp. 670–672, amended L.1969, p. 111, Third Extra Session, and officially codified in 1969 as §§ 564.441, 564.442 and 564.444.

son's breath, *to be considered valid under the provisions of sections 564.441, 564.442 and 564.444,* shall be performed according to methods approved by the state division of health by a person possessing a valid permit issued by the state division of health for this purpose. The state division of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct analysis [sic], and to issue permits . . . ." As the court concluded in State v. Paul, Mo.App., 437 S.W.2d 98, 102, 103, the statutory word "method" means "method of testing," whether by the Breathalyzer, the D.P.C., Photoelectric or Gas Chromatograph Intoximeter, or other. Further, as the court concluded in State v. Paul, supra, the requirements of § 564.441 are statutory substitutes for a common law foundation for the introduction of evidence of breath analyses for blood alcohol, and are mandatory. From State v. Paul, supra, which only tangentially considered the question raised here, and the decisions from other jurisdictions considering the precise question presented, we conclude and hold that in prosecutions for driving while intoxicated it is mandatory that the State, if it wishes to introduce evidence of a breath test for blood alcohol, must first show that the method of testing was a method specifically approved by the Division of Health; otherwise, the evidence is inadmissible and prejudicial.[4] It is unnecessary to go further and consider whether in every case in which the State seeks to introduce evidence of a chemical breath test for blood alcohol the Division's regulations must be introduced and proved in evidence; conceivably, a witness might be sufficiently familiar with those regulations to state what methods of testing had been approved at the time of testing. It is true, however, that neither a trial nor appellate court may take judicial notice of the rules or regulations of administrative agencies,[5] and Trooper Campbell's evidence in this case demonstrates that he was not familiar with the Division's regulations which were in effect at the time the test was made. Moreover, the defendant's objection was made to the introduction of *any* evidence concerning the Breathalyzer test, and Trooper Campbell, conceding that he was not authorized to interpret the result he obtained, went on to fence with his cross-examiner and add that "all persons . . . that checks more than .15 of one percent on the breathlyzer [sic] is considered to be intoxicated . . . all persons." Such a statement is a positive misstatement of the law, even if the witness had been properly qualified to interpret the test, and was in itself highly prejudicial. Cf. State v. Paul, supra, 437 S.W.2d at 101. In short, in this case, the result of the Breathalyzer test was received without a proper foundation having been laid, and the admission of that evidence was error.

4. State v. Paul, supra, 437 S.W.2d at 102–103 [8] [12, 13]; Smith v. State, 243 Ark. 12, 418 S.W.2d 627, 628 [1], and Jones v. Forrest City, 239 Ark. 211, 388 S.W.2d 386, 389–390 [2], so construing Ark.Stat.Ann. § 75–1031.1(C), which requires that the method of analysis " . . . be made by a method approved by the Arkansas State Board of Health"; Otte v. State, 172 Neb. 110, 108 N.W.2d 737, 740 [6], construing then Section 39–727.02, requiring that "[t]ests to be considered valid . . . shall have been performed according to methods approved by the Department of Health . . . "; State v. Gallant, 108 N.H. 72, 227 A.2d 597, 599–600 [4, 5]; People v. McFarren, 28 Misc.2d 320, 222 N.Y.S.2d 828, 830 [1] [2]. See also State v. Fogle, 254 Or. 268, 459 P.2d 873, 876.

5. Silas v. ACF Industries, Inc., Mo.App., 440 S.W.2d 189, 192 [4]; Nabors v. United Realty Company, Mo.App., 298 S.W.2d 474, 480 [6]; Anderson v. Kraft, Mo.App., 129 S.W.2d 85, 89–90 [3, 4], cert. quashed State ex rel. Anderson v. Hostetter, 346 Mo. 249, 140 S.W.2d 21; Wooldridge v. Scott County Milling Co., Mo.App., 102 S.W.2d 958, 967 [14]. It is otherwise, of course, with the regulations of Federal administrative agencies promulgated pursuant to authority delegated by the Congress. Fredrick v. Bensen Aircraft Corporation, Mo.App., 436 S.W.2d 765, 769–770 [3] [4].

We have not overlooked and do not overlook the State's earnest contention that the evidence was sufficient to sustain the conviction *without* the Breathalyzer evidence, citing State v. Chester, Mo.App., 445 S.W.2d 393. In the *Chester* case, however, the Breathalyzer evidence was received without objection, and the only testimonial reference to the test was Trooper McCoy's statement that the "test showed .24% blood alcohol." Such is not the case here. All the same, we cannot and do not agree with the defendant that in the event of a retrial the result of the Breathalyzer test will necessarily be inadmissible. The defendant misinterprets State v. Carwile, Mo.App., 441 S.W.2d 763, and State v. Corsiglia, Mo.App., 435 S.W.2d 430. Neither those cases nor State v. Paul, supra, 437 S.W.2d 98, as we read them, hold or furnish a foundation for holding that the result of a Breathalyzer test made before § 564.442, par. 2, was amended in 1969, L. 1969, p. 111, Third Extra Session, is inadmissible in any circumstance. What *Corsiglia* and *Carwile* pointed out is that in adopting the "implied consent" law in 1965 the General Assembly defined "blood alcohol" as meaning "milligrams of alcohol per one hundred *milligrams* of blood," [6] while the tests approved by the Division of Health, by definition, measured blood alcohol in milligrams of alcohol per one hundred milliliters (100 cc.) of blood. Therefore, a test by the Division's methods would not raise the statutory presumption of intoxication created by § 564.442, because the Division's measurement was not that called for by statute. To adopt and use the terminology of the *Corsiglia*

case, the statute required a determination of blood alcohol expressed by weight, i. e., weight per weight unit, while the Division's regulations called for, and the Breathalyzer measures, blood alcohol in per cent by volume. State v. Corsiglia, supra, 435 S.W.2d at 432 [2]. Nevertheless, as noted in State v. Hendel, Mo.App., 468 S.W.2d 664, 667, a Breathalyzer measurement—a measurement by volume—may be converted to a measurement by weight by considering the known specific gravity of human blood. Whether this computation is complex or relatively simple is something we cannot judicially know, and if the Division of Health has prepared and filed a conversion table, it has not been laid before us in this case. Nevertheless, since we do know that the reading obtained by Trooper Campbell may, by proper computation, be converted to a reading admissible in evidence, we decline to rule on the sufficiency of the evidence on this appeal. In this connection, it may be noted that § 564.442 *as amended* L.1969, p. 111, Third Extra Session, now calls for a measurement of blood alcohol *by volume*,[7] as that term is used in the *Corsiglia* and *Carwile* cases, and therefore a Breathalyzer test is now directly admissible in evidence in a prosecution under § 564.440 when the offense occurred after the effective date of the amendment, September 11, 1970, provided, of course, a proper foundation is laid for its admission.

For the reasons noted, the judgment is reversed and the cause is remanded.

TITUS, P. J., and STONE, J., concur.

6. The statute in question, originally § 3 of Senate Bill 45, L.1965, pp. 670–672, and codified as § 564.442 in the official 1969 revision, seems to have been taken from § 7(d) of the Uniform Chemical Test for Intoxication Law, 9 U.L.A. 68 (Supp.1967), which similarly defines "blood alcohol."

7. § 564.442, par. 2, now provides that per cent by weight shall be based upon milligrams of alcohol per one hundred *milliliters* (i. e., 100 cc.) of blood.