**STATE of Missouri, Respondent,**

v.

**James Wayne MILLIGAN, Appellant.**

**No. KCD 27190.**

Missouri Court of Appeals,
Kansas City District.

Dec. 2, 1974.

Gilbert R. Titus, Gary R. Titus, Independence, for appellant.

Edgar S. Carroll, Warrensburg, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

DIXON, Chief Judge.

Defendant appeals from a conviction for driving while intoxicated. The trial court, upon appropriate waiver of jury trial, heard the evidence, found defendant guilty and fined him $100.00.

Defendant asserts error in the conviction upon three grounds of trial error: (1) the admission of the results of a test of defendant's breath over defendant's objection of insufficient foundation; (2) admission of the officer's opinion of defendant's impairment of ability to drive without a proper foundation demonstrating the officer's expertise; (3) failure of trial court to direct a verdict for defendant on the ground that the evidence failed to show defendant was intoxicated at the time of the accident.

On March 28, 1973, appellant was engaged in driving a tractor-trailer truck on Route 58 when it overturned.

The evidence favorable to the verdict consisted of the testimony of three individuals and two Highway Patrolmen. Witness Roy Wetrich stated that he and a companion had traveled eight or nine miles east of Holden when they stopped on the shoul-

der of the highway to change out of their muddy boots. At that time, Mr. Wetrich observed appellant's truck, also proceeding easterly, overturn on the south side of the road. The witness rushed to identify appellant as its sole occupant. The only sign of injury was appellant's rubbing of his knee.

In the company of Mr. Wetrich was witness Harvert Rhodes whose description of the events was nearly identical to that of his companion. Mr. Rhodes was further able to fix the time of the accident at 5:30 p. m. Both of the witnesses stated that the shoulder of the road was muddy, and Mr. Rhodes added that the pavement was dry.

Jerry Lee Earl is the operator of a wrecker service and was responsible for righting the overturned truck. A short time before the accident, at 5:15 p. m., Mr. Earl had been called to the home of appellant's brother and asked to dislodge the same truck from mud at that location. The witness did so, and appellant then proceeded east on Route 58.

E. H. Morgan, the arresting officer, received a radio call at 5:40 p. m. respecting the overturned vehicle. He arrived at the scene some ten minutes later. The officer talked briefly with the two witnesses to the accident, and they resumed the task of "flagging cars by" with which they had been occupied prior to the trooper's arrival, and the trooper asked appellant to accompany him to the patrol car. Patrolman Morgan then observed that appellant "did stagger some," and when they were in the car, he "noticed a strong smell of an alcoholic beverage on his breath." Appellant was reluctant to leave the scene and, in fact, offered to fight the officer. The officer perceived no visible injuries. Appellant and the witness arrived at the police station about 6:10 p. m., where appellant was asked a series of questions. A few of these were:

" 'Have you been drinking?' He said, 'Yes.' 'And what?' 'Beer.' 'Quantity?' 'Two or three.' I asked him about what

time or when he had started, or when he had his first and I have no response listed there."

The officer further described appellant's appearance and demeanor during the period of questioning. He smelled strongly of intoxicants; his clothing was "mussed or soiled;" he was argumentative; he cursed occasionally; his eyes were bloodshot; and his speech "was slurred or incoherent, some." No explicit opinion regarding intoxication was ever sought, or given, by Officer Morgan.

There was evidence that the truck had traveled some 365 feet on the shoulder prior to overturning, and defendant admitted his truck had been on the shoulder.

The second highway patrolman testified that he had inspected the particular breath-a-lyzer both before and after the use with this defendant and that it was functioning properly. He further testified that he held the appropriate permit and had the necessary training to test the machine and that no one else would have so tested it or been called if it malfunctioned.

The appellant's first point that there was no evidence that the method of testing defendant's breath was a method approved by the Division of Health rests upon State v. Sinclair, 474 S.W.2d 865 (Mo. App.1971). That case does state, 1. c. 868:

". . ., we conclude and hold that in prosecutions for driving while intoxicated it is mandatory that the State, if it wishes to introduce evidence of a breath test for blood alcohol, must first show that the method of testing was a method specifically approved by the Division of Health; otherwise, the evidence is inadmissible and prejudicial."

A careful examination of *Sinclair* demonstrates, however, that there was absolutely no effort made to introduce any evidence of the type of machine or the manner of administration of the test. In fact, the State's evidence showed that it was

unable to prove by any competent evidence the conversion of the specified test results from blood alcohol by volume to blood alcohol by weight. No such issue is present in this case. In fact, in the instant case, there is substantial doubt that the objection made was appropriate to raise the issue decided in the *Sinclair* case. The transcript there shows the following:

"MR. TITUS: Object to that, if Your Honor please. There's no proper foundation having been shown that this Officer can answer that question. *He has not shown that he has complied with all the rules and regulations necessary for the giving of this type of a test.* No proper foundation having been laid—

THE COURT: In what respect, Mr. Titus, has he failed to show that—no foundation, and he hasn't complied with what rule or regulation?

(Discussion between the Court and Mr. Titus out of the hearing of the Court Reporter.)

THE COURT: Objection will be overruled." (Emphasis supplied.)

This objection goes to the manner of the administration of the test and not to the question addressed in *Sinclair* of the adoption of the method of testing by the Division of Health.

Finally, it is to be noted that the *defendant* offered Exhibit 1 without any qualification. That exhibit is the officer's checklist and certification as to the test made. The certification as to the method used refers specifically to the rules and regulations of the Division of Health and certifies the test was in accordance with the procedures established by the Division of Health.

■ On defendant's claim of error with respect to the opinion of the officer as to the impairment of defendant's ability to drive, defendant cites cases which hold that an opinion as to *intoxication* must be predicated upon an observation of facts upon which the opinion can rest. This is undoubtedly true. The question here was as to impairment of ability to drive and the question referred the trooper both to his observation of the defendant's actions at the scene and at the county jail as well as the officer's experience in law enforcement. The trooper, with seven years tenure on the Highway Patrol and with recitations of special training, gave explicit direct evidence of the observations of defendant as to physical ability which sufficiently demonstrated the basis for his opinion as to impairment.

■ Defendant's final point that a motion for a directed verdict should have been sustained is based on the contention that the evidence of intoxication at the time of the breath-a-lyzer does not prove that defendant was intoxicated. Reliance is placed on State v. Dodson, 496 S.W.2d 272 (Mo.App.1973) for the proposition that an essential element of the State's case is proof of intoxication while driving and that proof of intoxication at a subsequent time does not sustain the State's burden.

Defendant further relies on State v. Taylor, 422 S.W.2d 633, 638 (Mo.1968) for the proposition that disbelief cannot operate as proof and that, therefore, the trial court's stated disbelief of defendant's testimony as to obtaining and drinking alcoholic beverages from his brother does not supply affirmative proof that all of defendant's condition occurred prior to the accident.

The difficulty with the application of these cases to the present one lies in the differences in the factual situation. *Dodson* ruled a state of facts where there was no evidence of intoxication at the scene. In fact, there was direct testimony by a witness who came to the scene that the defendant was not intoxicated *at the scene*.

In the instant case, considering the evidence and the inferences therefrom favorably in support of the verdict, the following facts are persuasive in deciding the issue of intoxication while driving adversely to defendant.

The defendant, who had mired his truck on the shoulder of the road in Holden, Missouri eight miles from the scene of the accident, was towed out of that ditch at 5:15 p. m. At approximately 5:30 p. m., by the eye witness' estimate, he turned his truck over on the "8-mile curve." He left 365 feet of tracks on the muddy shoulder immediately prior to turning over. He had also swerved off the pavement several other times in the eight miles. At 5:40 p. m., the trooper received the call, responding within ten minutes to the scene. Immediately upon arrival, the trooper took control of the defendant and placed him in the patrol car. At the time the defendant entered the patrol car, the trooper noticed staggering and a belligerent attitude as well as the strong odor of alcohol. The defendant later admitted consumption of beer, but declined to say when he started drinking. Thus, the time evidence was such that the time after the accident within which defendant could have consumed alcohol prior to direct observation was only twenty minutes at a maximum. The trial court expressly found that he did not believe the defendant's claim of obtaining whiskey from his brother. The disbelief, it is true, does not go to prove nonaccess (State v. Taylor, supra), but such an express finding prohibits a belief that he did obtain whiskey from his brother, and there is a strong inference from the entire evidence that the brother did not arrive prior to the patrolman. He certainly did not arrive as the first vehicle on the scene following the truck, as the eye witnesses testified that immediately after the defendant's removal from the truck they were "flagging cars by." The brother, who had remained in Holden to get a suitcase, could have very easily been several cars behind the truck. Also, the trooper's evidence indicates affirmatively that the first time he saw the brother the defendant was already in the car. The trooper got out of the car and talked with the brother about removal of the truck's cargo. Absent that source, there is no evidence of any access to intoxicants and that, coupled with evidence of intoxication at the scene, distinguishes this case from *Dodson* and, as the State argues, makes it more akin to State v. Chester, 445 S.W.2d 393 (Mo.App.1969). In *Chester*, as here, the trooper arrived on the scene within ten to fifteen minutes and discovered the defendant in an intoxicated condition. Despite defendant's testimony of consumption of alcohol after the accident and before the arrival of the trooper, the jury convicted, and on appeal the conviction was affirmed.

The defendant's third point is denied. Conviction affirmed.

All concur.