STATE of Missouri, Respondent,

v.

Joe Russell ENGLISH, Appellant.

No. KCD 29889.

Missouri Court of Appeals,
Kansas City District.

Nov. 27, 1978.

Application to Transfer Denied
Feb. 13, 1979.

McQuie & Deiter, Montgomery City, for appellant.

C. E. Hamilton, Jr., Pros. Atty., Fulton, for respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from conviction by a jury of driving a motor vehicle while intoxicated. Appellant questions admission of opinions and breath test results on the issue of intoxication, and propriety of the State's argument. Affirmed.

On December 22, 1976, shortly after 6:00 p. m., Kent Baumgartner, with Larry Williams as a passenger, left Auxvasse, driving his 1976 Chevrolet east on Callaway County Route B, a black-top road. At a point three or four miles out of town, they saw an automobile with lights burning, traveling west, coming over a hill toward them. As the two vehicles neared, the westbound automobile, a 1971 Chevrolet driven by Joe Russell English, crossed the center line into a side-swiping collision with the 1976 Chevrolet at the east end of a bridge. Mr. English continued west and backed into a field entrance on the north side of the road. Mr. Baumgartner turned around, went after the westbound vehicle, and stopped at the field entrance where it was parked. Both drivers got out of their cars. Mr. English stood holding the door and seemed unstable on his feet. After a few minutes, and after Mr. Baumgartner's suggestions that the highway patrol be called, Mr. English got back in his car. He insisted several times that the patrol should not be called.

Both drivers drove to English's office in Auxvasse. Mr. English was in front and weaved and swerved. They arrived at Mr. English's office at about 6:30 p. m. Mr. Baumgartner tried to call the police but the line was busy. Mr. Williams went to a filling station to find someone to call the police but failed. They ultimately succeeded in getting a passing motorist to call the police. During this time, Don Huddleston, a friend of Mr. English, came to the office

and saw him take a drink of liquor. When Mr. Baumgartner returned to the office, he noted the smell of alcohol as he had upon first arrival. He saw no change in Mr. English's actions from first sight at the field entrance until the trooper's arrival. He did not see Mr. English drink during that time. Mr. Baumgartner, age 19, had observed intoxicated people several times and, in his opinion, defendant was intoxicated. Mr. Williams, age 14, had observed people on a few occasions of intoxication and he, too, was of the opinion defendant was intoxicated. Mr. Williams saw English drink whiskey about five to ten minutes before the trooper arrived.

Trooper Dale Swartz arrived at Mr. English's office at 6:57 p. m. and remained there until 7:06 or 7:07. He observed that defendant's face was flushed, his eyes watery, his speech confused, that he was unsteady and staggering, and smelled of intoxicants. Defendant told Trooper Swartz he began drinking at 5:00 p. m. Trooper Swartz was of the opinion English was intoxicated at 7:00 p. m. He saw defendant drink from a fifth of whiskey which was one-half to two-thirds full.

Trooper Bill Baker, holder of a Type 3 permit for the breathalyzer machine, saw defendant at 7:15 p. m. and noticed a stagger in his walk, an odor of intoxicants, a flushed face, and messy, disarranged clothing. In his opinion, defendant was intoxicated at 7:20 p. m. Trooper Baker administered the breathalyzer test to defendant following procedures set forth in the operational check list in evidence. The result was .19 per cent (.19 of one per cent by weight of alcohol in the subject's blood).

Afton Ware, a chemist with the highway patrol, had examined a breathalyzer as an instrument for analysis of alcoholic content of blood. He stated it is generally accepted by authorities on intoxication that at .10 of 1% of alcohol and above, a person is considered intoxicated. He was of the opinion the breathalyzer is a reliable test for determination of the amount of alcohol in a person's blood.

Appellant charges the court erred (I) in admission of the opinions of Baumgartner and Williams on the ground "no foundation was laid" to permit their conclusions in evidence.

Lay witnesses may give an opinion on the intoxication of another if preceded by evidence of conduct and appearance observed by them to support the opinion. *State v. Fisher*, 504 S.W.2d 281, 283 (Mo.App.1973); *State v. Bruns*, 522 S.W.2d 54, 55 (Mo.App. 1975); *State v. Edmonds*, 468 S.W.2d 685, 688 (Mo.App.1971). The basis for admission of such an opinion should be such as to render the witness able to arrive at an intelligent opinion with respect to the subject matter. 32 C.J.S. Evidence § 546(4), p. 117. The admission or exclusion of such opinion is within the court's discretion, and such discretionary rulings are reviewable to determine abuse. *State v. Edmonds*, supra.

The evidence which preceded the opinions of witnesses Baumgartner and Williams follows.

Defendant, in the course of operating his automobile, drove across the center line of the road and sideswiped the Baumgartner automobile. He did not stop, but continued on and backed his car off the road into a field entrance. When the young men arrived at the field entrance, defendant got out and held on to his car during the ensuing conversation. He was unstable and unsteady on his feet. Defendant resisted suggestions that the police be called and insisted several times they not be called. While proceeding on to town, defendant weaved and swerved. Defendant smelled of alcohol upon arrival at his office. Both young men had experience gained by observation of intoxicated persons on previous occasions.

The foregoing provided the requisite support for the opinions of witnesses Baumgartner and Williams, *State v. Fisher*, supra, and a basis for intelligent opinions from such witnesses, 32 C.J.S., supra. See also *State v. Powell*, 306 S.W.2d 531, 532 (Mo.1957), *State v. Paul*, 437 S.W.2d 98 (Mo. App.1969), and *State v. Mayabb*, 316 S.W.2d 609, 612 (Mo.1958), where similar circumstances provided acceptable foundations for

admission of lay opinions on intoxication. Cf. *State v. Bruns*, supra, where the circumstances were deemed insufficient to lend probative value to an opinion of intoxication.

Accordingly, it may not be said that the court abused its discretion in admission of the opinions of witnesses Baumgartner and Williams. *State v. Edmonds*, supra.

■ Appellant charges the court erred (II) in permitting Trooper Baker to testify to the results of the breathalyzer test he gave defendant. He argues (A) the operational check list, Exhibit 5 in evidence, was inadmissible hearsay; and (B) without it, there was no evidence that approved methods were used to make the test results admissible.

Section 564.441 RSMo provides:

"1. * * * The test shall be administered by or at the direction of a law enforcement officer * * *.

"2. Chemical analysis of the person's breath, to be considered valid * * * shall be performed according to methods approved by the state division of health by a person possessing a valid permit issued by the state division of health for this purpose * * *."

There was evidence to show that the state division of health approved the breathalyzer as a test for intoxication; that the instrument used to test defendant was found in working order upon inspections conducted December 2, 1976, and January 2, 1977, with no complaints of malfunction in the interim; that Trooper Baker held a qualifying permit for administration of breathalyzer tests; that he followed procedures set forth in an operational checklist which was admitted as Exhibit 5 in the following context:

"Q. O.K. Now, did you run the breathalyzer test on Mr. English? A. Yes, I did. Q. O.K. And what procedure did you use to run that breathalyzer test? A. The procedure that's stated there on the . .

"MR. McQUIE (for Appellant): I'm . . I'm going to object to that. I . . . I think that'd be hearsay. I . . . I understood it to be what did he physically do and I think that's what he ought to answer. I'm going to object to him saying that he followed some procedure that's set down somewhere else. That's hearsay. THE COURT: No, overruled.

"Q. Let me show you what has been marked as State's Exhibit 5 and ask you if you can identify that. A. Yes, sir, I can. Q. And what is it? A. This is my operational checklist that we follow when administering the breathalyzer. Q. O.K. Is that any particular checklist that you follow? A. This is the one that I filled out for, uh, Mr. Joe English. A. O.K. And are those the procedures on there that you followed on that night in warming up and operating the breathalyzer machine? A. Yes, sir, it is."

Exhibit 5 contained, in addition to a check off of each procedure, the form certification by Trooper Baker that "There was no deviation from procedures outlined by the manufacturer and those approved by the Division of Health."

The foregoing demonstrates that Exhibit 5 was but a recapitulation of the procedures Trooper Baker testified he followed, together with his certification that they did not deviate from procedures required by the manufacturer and the division of health, all subject to cross-examination. As such, it was not inadmissible hearsay; and it constituted, along with the other matters mentioned, evidence that approved procedures were used in testing defendant. See *State v. Milligan*, 516 S.W.2d 795, 796 (Mo.App. 1974), where similar circumstances were sufficient to show that the method of testing defendant's breath was approved. Compare contrary results in *State v. Sinclair*, 474 S.W.2d 865 (Mo.App.1971), where there was no effort to show type of machine or manner of administration of the test, and *State v. Deimeke*, 500 S.W.2d 257 (Mo.App.1973), where the evidence showed the machine was inaccurate and malfunctioning.

■ Appellant charges the court erred (III) in receiving opinions of Troopers Swartz and Baker on defendant's intoxication when they saw him at 7:00 p. m. and 7:20 p. m., and the breathalyzer result of 7:29 p. m., "because same were based on observations and testing * * * at least thirty minutes after he operated a motor vehicle and after he had * * * consumed a quantity of intoxicants following his operation of a motor vehicle, and his intoxication at such [remote] time * * * was not substantial evidence of driving while intoxicated."

In cases where the only evidence of a defendant's intoxication is remote from the time when he was shown in operation of a motor vehicle, verdicts of driving while intoxicated cannot stand. See, for example, *State v. Dodson*, 496 S.W.2d 272 (Mo.App. 1973), where the only evidence was that defendant was found by a highway patrolman in an intoxicated condition in his home some six to eight hours after occurrence of an automobile accident in which defendant was involved as a driver; and *State v. Kennedy*, 530 S.W.2d 479 (Mo.App.1975), where there was no evidence indicating when defendant drove his car to the position where it was found subsequently by the police officer and defendant was found in an intoxicated condition outside the car.

Defendant is not entitled to application of those holdings because there was evidence to show his intoxication while driving his car. Witnesses Baumgartner and Williams so testified, and the testimony of Troopers Swartz and Baker and the breathalyzer result were admissible in that context. The jury would weigh also the effect of defendant's subsequent imbibing, if so. See *State v. Chester*, 445 S.W.2d 393 (Mo. App.1969), and *State v. Milligan*, supra.

■ Appellant charges the court erred (IV) "in permitting the prosecuting attorney to argue * * * there is a presumption appellant was intoxicated, it having been shown his blood alcohol content was over 10 hundredths of one percent, because the construction and effect to be given results of chemical analysis of the blood are matters of law, set out in the statutes authorizing reception of such evidence, as to which the court should properly have been requested to instruct the jury, and this was not done."

The argument in question is given these transcript references, viz.: "Mr. Ware told you that the presumption of intoxication is .10 of 1 per cent and so what we're talking about is a breathalyzer reading that was not just .10, but almost double * * almost double .10 (214). So what we're talking about is a breathalyzer reading which is .19 when it was given, was almost double what the presumption of intoxication is, not just barely over, but double of what the presumption of intoxication was (215). Then there's the breathalyzer test that is double the presumption (232)." Defendant's objections asserted the argument was a matter of law and "improper evidence." They contained no request for relief, and were simply overruled.

Control of arguments of counsel is a matter within the discretion of the trial court, and the exercise of that discretion in connection with argument is not ground for reversal absent abuse. *State v. Hooker*, 536 S.W.2d 487 (Mo.App.1976). Thus the question is whether, in their context, the rulings in question constituted an abuse of discretion.

Section 564.442.1(3) provides:

"If there was ten-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken."

MAI–Cr. 3.40, which must be given if requested and if there is evidence of ten-hundredths or more of one per cent by weight of alcohol in the blood of the defendant, directs the jury that it "may infer that the defendant was intoxicated * * ."

Witness Ware was asked: "Would you describe to the jury what is generally accepted among people of scientific training as the percentage of alcohol in the blood-

stream that would indicate that an individual is intoxicated?"

Mr. Ware responded: "* * * it's generally accepted by authorities in the field of intoxication at .10 alcohol [of 1%] and above, that a person is considered intoxicated."

The foregoing demonstrates the argument had evidentiary support. "Presumption" is not the language of the statute or MAI–Cr., but the prosecuting attorney was not reading or referring to either. He was arguing to lay jurors and, in such, is entitled to draw inferences deducible from the evidence. *State v. Ball*, Mo.App., 529 S.W.2d 901. Among the meanings ascribed to "presume" are: "inference, deduction, conclusion"; and to "presumption": "inference, deduction, conclusion." Roget's Thesaurus of the English Language in Dictionary Form, Mawson, Revised Edition 1936.

Judgment affirmed.

All concur.