**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Samuel Dayton BARKER, Defendant-Appellant.**

**No. 34461.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Jan. 9, 1973.

Thomas I. Osborne, Pros. Atty., Mexico, for plaintiff-respondent.

Michael A. Turken and George E. Sullivan, O'Fallon, for defendant-appellant.

KELLY, Judge.

This appeal from a judgment of the Circuit Court of Audrain County, Missouri, was taken by the Defendant-Appellant (hereinafter referred to as the defendant) for review of his conviction on three separate charges arising out of the operation of a motor vehicle on Highway 54 in Audrain County, Missouri, on May 29, 1971. Missouri Uniform Traffic Tickets were issued to the defendant summoning him to appear in the Magistrate Court of Audrain County, Missouri, on the 18th day of June, 1971, to answer charges of: (1) speeding by driving a motor vehicle on U.S. Highway 54 near Scott's Corner at a time when lighted lamps were required on said vehicle and the lawful speed limit for passenger cars on the highway was sixty-five (65) m. p. h. in excess of said speed limit, to-wit, eighty (80) m. p. h.; (2) failing to drive on the right side of the roadway; and (3) driving while intoxicated. According to the Missouri Uniform Traffic Tickets issued these charges were based on violations of the following sections of the Mis-

souri Revised Statutes: Section 304.010, 304.015 and 564.440 respectively, V.A.M.S.

The traffic tickets (as these Missouri Uniform Traffic Tickets shall hereinafter be referred to) were filed in the Magistrate Court of Audrain County, Missouri, and on June 3, 1971, the prosecuting attorney for Audrain County filed an Information in three counts charging the same offenses set out in the traffic tickets, but he did not sign the traffic tickets in the spaces thereon for the signature of the prosecuting official. On July 12, 1971, the defendant appeared and filed his application for change of venue from the Magistrate Court of Audrain County, Missouri; this application was sustained and the cause was transferred to the Circuit Court of Audrain County, Missouri, where the defendant appeared in person and by counsel for arraignment and entered his plea of not guilty on each of the charges. The cause was set for trial on October 22, 1971, and on that date a trial by jury was had. The jury returned a verdict of guilty on each count but in their verdict advised the court that they were unable to agree on the punishment to be imposed; thereupon the trial judge fixed the punishment on each count as follows: Count I—speeding—$20.00 and court costs; Count II—failure to drive on the right half of the roadway —$25.00 and court costs; and Count III—driving while intoxicated—60 days in jail and court costs. Defendant filed a timely motion for new trial which was presented, considered and overruled. Allocution was granted and sentence was imposed as previously fixed by the trial judge. This appeal followed.

The facts, most favorably considered from the standpoint of the State and as the jury could have found from the evidence are: that at approximately 1:30 a. m. on the morning of the 29th day of May, 1971, Trooper Gordon Hale of the Missouri State Highway Patrol was proceeding westwardly on U.S. Highway 54 in a patrol car of the Highway Patrol some distance east of the City of Mexico, in Au-

drain County, Missouri, when he observed a 1970 Mercury Monterey convertible automobile traveling eastbound at a high rate of speed. That at this location where he made this observation the highway is two lanes wide—24 feet wide. That also at this time the Mercury convertible automobile was traveling with the right front headlight out. The trooper, as soon as he found a place to turn around, made a U turn and headed the patrol car back in the direction from whence he had come to overtake the passing Mercury convertible. The trooper had to travel in excess of 110 m. p. h. to get into position to pace the Mercury convertible, but, when he did, he paced it for a distance of two miles and formed the opinion that it was traveling in excess of 80 m. p. h., 15 m. p. h. in excess of the legal speed limit. The trooper then turned on the red lights on the top of the patrol car and closed on the Mercury convertible, which started weaving across the centerline of the two lane highway until it went over a small hill when it veered sharply to the left and went completely onto the left side of the highway and back again into the eastbound traffic lane. Both cars proceeded eastwardly on U.S. 54 until the Mercury convertible turned off U.S. 54 at its intersection with Route BB and into a roadside park situated there. The trooper pulled in behind the Mercury convertible, got out of the patrol car and walked up to the Mercury convertible where he recognized the defendant "underneath the wheel." He directed the defendant to get out of the car and to come to the rear of the defendant's car. The trooper observed the defendant get out of the Mercury convertible and walk to the rear of the Mercury convertible. He observed the defendant in the headlights of the patrol car and the defendant walked in a bent-over position and as he drew near the trooper could smell the odor of alcohol on him. The defendant's eyes were "bleary, he was red-faced, his clothing was mussed and his beard was awry." The trooper expressed his opinion that the defendant was at that time intoxicated. The

trooper took the defendant to the Mexico Police Station where the defendant consented to take a breathalyzer test. Trooper Hale administered the breathalyzer test and obtained a reading of .22th of 1% blood alcohol, which corroborated his opinion of the defendant's intoxication at the time he was driving the motor vehicle on U.S. 54.

The defendant on appeal contends that the judgment of the trial court should be reversed for the following reasons:

1. the trial court was without jurisdiction because (a) the prosecuting attorney failed to sign the Missouri Uniform Traffic Tickets, (b) the traffic tickets failed to allege that the offenses charged occurred on a public road or highway, and (c) the information filed in the Magistrate Court of Audrain County, Missouri, was invalid because not in the form of the Uniform Traffic Ticket as required by Supreme Court Rules 37.05 and 37.46, V.A.M.R.;

2. the trial court admitted into evidence, over objection, the results of a breathalyzer test which was not administered in accordance with the regulations governing its use and which did not give results expressed in terms of Section 564.442 RSMo., V.A.M.S.;

3. the trial court admitted into evidence, over objection, testimony relative to the speed of the vehicle when there was no proper foundation laid for such testimony; and

4. the trial court admitted into evidence, over objection, testimony relative to the condition of another individual in the car with the defendant when such evidence was irrelevant, immaterial and highly prejudicial.

In considering defendant's allegations of error with respect to his first contention and the three subdivisions thereunder, we may treat those with reference to the traffic tickets and the information as one.

Defendant relies on two cases. Kansas City v. Asby, Mo.App., 377 S.W.2d 511 and State ex rel. House v. White, Mo.App., 429 S.W.2d 277. In Kansas City v. Asby, supra, the failure of a prosecuting official to sign the Missouri Uniform Traffic Ticket under oath was held to deprive the court of jurisdiction because the complaint signed by the arresting police officer was not thereby converted into an information, and the controlling city ordinance, Section 35,100 of Ordinance No. 21,000, required that the procedures in criminal cases triable before the Municipal Court should be the same as the law prescribes for the trial of misdemeanors, i. e., by information. Section 543.-020 V.A.M.S. The second case, State ex rel. House v. White, supra, was a proceeding on a writ of mandamus by the relator who had entered a plea of guilty to two traffic offenses (careless driving and driving while under the influence of intoxicating liquor) before a judge of the Municipal Court of Kansas City, Missouri, petitioning the Circuit Court of Jackson County, Missouri, to direct the said judge of the Municipal Court to either permit the petitioner to have his plea set aside or to permit him to perfect an appeal to the Circuit Court of Jackson County from the Municipal Court. The writ was denied 'in the Circuit Court and the cause dismissed; an appeal was taken to the Kansas City Court of Appeals and in 429 S.W.2d 281(4) the court had the following to say:

"Were it not for one other circumstance which has not been mentioned by either party, this would dispose of the case. However, from an examination of the record before us it appears as a fact which we cannot ignore that neither of the uniform traffic tickets which contained the charges against petitioner in municipal court was signed by the city counselor, assistant city counselor or any other proper prosecuting official. The exhibits reveal that the place for such signature is entirely blank on each ticket and no such signature appears anywhere

on either traffic ticket. Thus, this matter comes squarely within the holding in Kansas City v. Asby, Mo.App., 377 S.W.2d 511, wherein it was held that in the absence of such signature, no charge was in fact filed against the defendant and that the proceedings in the municipal court were a nullity. It therefore follows that the proceedings had in the municipal court against petitioner were void ab initio and consequently the judgments entered against petitioner by municipal court are void. * * * We therefore remand this cause to the circuit court with directions to issue its writ of mandamus to the respondent municipal judge directing him to dismiss the proceedings against petitioner because no valid charge was ever brought against petitioner and all proceedings purported to be had in municipal court were void."

We have no quarrel with these cases; however, we conclude that they are not controlling in this case, for we are here presented with a different proposition.

Rules 37.46–37.50 V.A.M.R. govern the practice and procedure in magistrate courts in all traffic cases in which that court has original jurisdiction. Rule 37.01 V.A.M.R. Magistrates have concurrent original jurisdiction with the circuit court, coextensive with their respective counties in all cases of misdemeanor, except in cities having courts exercising exclusive jurisdiction in criminal cases. Section 543.010 V.A.M.S. Each of the traffic violations charged herein are misdemeanors under the law of this State. The information in traffic cases "shall be in the form, known as the 'Uniform Traffic Ticket' substantially the same as set out in Rule 37.1162, such form to be used *as is applicable* and in accord with the law of the particular jurisdiction." (Emphasis supplied.) Rule 37.46(a) V.A. M.R. While the "Uniform Traffic Ticket" shall be used in traffic cases whether or not the information is made by the prosecutor, Rule 37.46(b) V.A.M.R., nothing in

Rule 37.46 shall prevent the filing of a more detailed information by a proper prosecuting attorney. Rule 37.466 V.A.M. R.

■ Here we are concerned with a charge of operating a motor vehicle while in an intoxicated condition under Section 564.440 V.A.M.S. and paragraph 2 of that statutory enactment provides for an increased range of punishment for a second conviction of the offense and evidence of the prior conviction shall be heard and determined by the trial court out of the hearing of the jury prior to submission of the case to the jury. It further requires the court to enter its findings on this issue. It was, therefore, necessary for the prosecution to plead the prior conviction for operating a motor vehicle while in an intoxicated condition and thus apprise the defendant that upon conviction he would be subject to the increased range of punishment prescribed for a second conviction and thus afford him an opportunity to meet the allegations if he might. In State v. McClay, 146 Me. 104, 78 A.2d 347, 350(5) the court said:

> "When a statute imposes a higher penalty upon a second and a third conviction, respectively, it makes the prior conviction of a similar offense a part of the description and character of the offense intended to be punished; and therefore the fact of such prior conviction must be charged, as well as proved. . . ."

See also State v. Eichler, 248 Iowa 1267, 83 N.W.2d 576; 42 C.J.S. Indictments and Informations § 145 B, p. 1059. In essence, the prior conviction must be pleaded in the same manner as a prior conviction under Section 556.280 V.A.M.S., our Second Offender Act.

The Missouri Uniform Traffic Ticket makes no provision for the allegations of a prior conviction on the form promulgated pursuant to Supreme Court Form 37.1162 for use in municipal and traffic court cases. Section 543.020 V.A.M.S. provides that prosecutions before magistrates for misdemeanors shall be by information and Section 543.030 V.A.M.S. further provides that all such informations shall be made by the prosecuting attorney of the county in which the offense may be prosecuted, under his oath of office and filed with the magistrate as soon as practicable and before the party or parties accused shall be put upon their trial or required to answer the charge.

■ These Sections of the Missouri Statutes and the Supreme Court Rules governing the practice and procedure in magistrate courts in all traffic cases where the magistrate court has original jurisdiction are not in conflict; rather, they complement one another. The uniform traffic ticket is to be used in traffic cases in the magistrate courts of this State "as is applicable and in accord with the law of the particular jurisdiction" (Rule 37.46(a) V. A.M.R.); however, where, as in this case now before the court, it is necessary to allege more details to bring into play increased punishment for subsequent convictions and so advise the defendant, then the filing of an information in usual form in lieu of the traffic ticket is proper. The information in this case was filed within a reasonable time after the issuance of the traffic tickets and before the defendant was put upon his trial or required to answer the charges.

■ Where, as here, the defendant is charged in several traffic tickets with multiple offenses growing out of the same general state of facts and circumstances, and in one or more of the charged offenses increased punishment is prescribed for subsequent convictions of the same offense and it is necessary to allege said prior convictions in the pleadings, we find no error in permitting them to be pleaded as separate counts in a single information in the usual form. The different counts may be tried separately or jointly in the sound discretion of the trial court. Rule 37.58 V.A. M.R.

We therefore rule those two points against the defendant.

■ Defendant's next contention that the information is not in due form because it fails to allege that the offenses occurred on a public road or highway is also without merit.

■ Count III of the information charges the defendant with driving a motor vehicle on U.S. Highway 54 near Scott's Corner while he was in an intoxicated condition. Section 564.440 V.A.M.S. reads as follows: "No person shall operate a motor vehicle while in an intoxicated condition." There is no requirement that to constitute the offense it either be alleged or proved that the motor vehicle was operated by the defendant on a public road or highway. The traffic ticket also states the place of the offense to be the same as the location stated in the information filed by the prosecuting attorney. Defendant could not have been misled. State v. Weston, Mo., 202 S.W.2d 50, 53(8); State v. Davis, Mo., 143 S.W.2d 244, 247(4); State v. Pike, 312 Mo. 27, 30, 278 S.W. 725, 726(4) and 4A Mo. Digest, Automobiles, ■ p. 644.[1]

■ With respect to Counts I and II of the information, we must, in determining the sufficiency of the pleading, look at it from its four corners, and in its entirety. Section 543.020 V.A.M.S. requires only that the information "shall set forth the offense in plain and concise language, with the name of the person or persons charged therewith. . . ." The Courts of this State have further required that the information contain all the essential averments to notify the accused of the nature and cause of the accusation and that it state sufficient facts to bar a subsequent prosecution for the same offense. State v. Hook, Mo.App., 433 S.W.2d 41, 44. In case of misdemeanor the information is not required to be so precisely stated as in cases of felony; as has been stated hereinbefore, we are here concerned with misdemeanors.

■ Examining the information in light of the foregoing, we find that in Count I of the information the defendant is charged with driving a motor vehicle "on U.S. 54 near Scott's corner." In Count II it is alleged: "At said time that section of U.S. Highway 54 near Scott's Corner *was a public* highway." (Emphasis supplied.) We judicially note, as the trial court could, that U.S. Highway 54 is a public road or highway, and as was stated in State v. Richards, Mo.App., 429 S.W.2d 351, 354: "It is difficult to believe that any reasonably intelligent person could read this information and not be fully informed of the nature of the violation charged." We also rule this contention of error against the defendant.

Defendant's next contention is that the trial court improperly admitted into evidence, over his objection, the results of a breathalyzer test. He bases his allegation of trial error on two grounds: (1) that the test was not administered in accordance with the regulations of the division of health governing its use, and (2) the test does not give results expressed in terms required by Section 564.442 V.A.M.S.

In the Argument section of his brief the defendant is more specific and sets out those sections of the regulations of the division of health which he contends were not complied with. They are, he asserts:

(1) Section 4 C 9—which requires the operator to identify, label and protect any preserved samples for subsequent chemical analysis in such a manner that legal continuity will be maintained,

(2) Section 4 C 7—which requires that the operator shall employ only single test chemical reagents received in a sealed

---

1. See Anno—Applicability, to Operation of Motor Vehicle on Private Property, of Legislation Making Drunken Driving a Criminal Offense, 29 A.L.R.3rd 938, wherein at p. 941 the Weston & Pike cases, supra, are cited in note.

condition and from a source approved by the State Division of Health, and

(3) Section 4 C 8—which requires that the operator shall insure that the individual to be tested has not vomited within 15 minutes of collecting the air sample.

Section 564.441 V.A.M.S. provides that: "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 564.441, 564.442 and 564.444, a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while intoxicated. The test shall be administered by or at the direction of a law enforcement officer whenever the person has been arrested for the offense." To be considered valid under the provisions of sections 564.441, 564.442 and 564.444, the chemical analysis of the person's breath shall be performed according to methods approved by the state division of health by a person possessing a valid permit issued by the state division of health for that purpose. Section 564.442 V.A.M.S. provides that when a person is charged with driving a motor vehicle while intoxicated evidence may be introduced to show the amount of alcohol in his blood as indicated by chemical analysis of his breath, and if there was fifteen-hundredths of one per cent or more by weight of alcohol in the person's blood, this is prima facie evidence that he was intoxicated at the time the specimen was obtained.

The division of health has approved the breath analyzer as a device which directly measures the alcohol in expired (alveolar) air and indicates the alcoholic content of the blood in milligrams per 100 milliliters of blood, or which captures the alcohol in expired (alveolar) air and from which the alcoholic content of the blood can be calculated in milligrams per 100 milliliters of blood. Section 1, Rules for Determination of Blood Alcohol by Breath Analysis, 1970. Section 564.442, subd. 2 states: "Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred milliliters of blood." A "breathalyzer" is a device which chemically analyzes breath exhaled from a person's lungs through a tube and into an ampul and measures the alcoholic content of the blood in milligrams per 100 milliters of blood; it has been approved by the division of health for use as a breath analyzer, Section 8, Rules for the Determination of Blood Alcohol by Breath Analysis, and it has been recognized by the Supreme Court, en banc, as a reliable device for this purpose. Blydenburg v. David, Mo., 413 S.W.2d 284, 288(2).

The division of health has also established standards for the issuance of permits to persons qualified to administer breath analyzer tests. Among those permits is a "Type III" permit to operate specified breath analyzer devices for the determination of blood from a sample of expired (alveolar) air. To qualify for a Type III permit the applicant must not be less than 21 years of age and have successfully completed a recognized training course conducted by a person in possession of a valid Type II permit issued by the division, or have successfully completed a recognized training course approved by the division, or offer proof of equivalent qualifications to the satisfaction of the division.

The division of health has also established "Operating Rules" for the different classification of permits issued and these are contained in Section 4 of the Rules for Determination of Blood Alcohol by Breath Analysis.

The record on appeal in this case shows that Trooper Hale was the holder of a Type III permit issued by the division of health and is authorized to operate a Breathalyzer 900 machine for the purpose of determining the alcoholic content of one's blood. He had training in this procedure when he attended one week's training

at Troop F Headquarters in Jefferson City, Missouri, in January, 1966, and he has held a Type III permit ever since then.

Trooper Hale identified the machine used to test defendant's breath as a Breathalyzer 900 breath analyzer and described in detail the operation of the machine. Other witnesses testified as to the accuracy of the machine and the liquid contents of the ampuls used in the testing procedure. The ampuls were identified as having been obtained from a "batch" manufactured by Stephenson Corporation, an approved manufacturer, and bearing the identifying batch number "482". Trooper Hale also produced an "Operational Check List" on which he checked off the steps as he performed them in the administration of the breathalyzer test of this defendant, from "preparation" through "purge" and finally "analysis". It would serve no purpose to extend the length of this opinion by detailing all of the trooper's testimony nor that of the other troopers produced by the State as witnesses to establish the validity of the test; suffice it to be said that after an exhaustive study of their testimony in the record we conclude that the undisputed testimony is that the Breathalyzer 900 was functioning normally at the time the test was administered and a prima facie showing that it was in proper working order and computed the alcoholic content of the defendant's blood accurately was made by the State. Trooper Hale certified on the back of the "operational Check List" that "There was no deviation from procedures outlined by the manufacturer, and those approved by the Division of Health." There is no evidence in the record to contradict this certification by the trooper.

■ Defendant contends however, that compliance with Section 4 C 9 of the Rules of the Division of Health requiring safekeeping of a "preserved sample" for subsequent chemical analysis was not affirmatively shown and thus the rules were not complied with. We note that on the bottom of the "Operational Check List" appears the following: "DISPOSE OF TEST AMPUL, TURN CONTROL KNOB TO 'OFF'" (Emphasis supplied.) Whether or not the trooper complied with this requirement would not affect the validity of the test and should not, therefore, affect its admissibility. We so rule. And unless the defendant shows the manner in which this would be prejudicial to him we see no basis for holding otherwise.

■■ Defendant's contention that the State did not show that the operator employed only a single test chemical reagent in a sealed condition and from a source approved by the division of health as required by Section 4 C 7 of the rules is also without merit. The record on appeal contains sufficient evidence that the chemical reagent in the test ampul was received in a sealed condition and was manufactured by one of the approved sources. Trooper Hale testified in describing the preparations for the test that he removed 2 of the ampuls containing the potassium dichromate and sulphuric acid solution from a box with "Stephenson Corporation" (one of the sources approved for the manufacture of the single test chemical reagent—rule 4 C 7) written all over it, and that this box was kept in a cabinet in the Mexico Police Station. He further testified that both of these ampuls were sealed and bore the "batch number" 482 on the side of each ampul. He took this "batch number" from the ampuls and wrote it on the "Operational Check List." He then put one of these ampuls on the left hand side of the device—this ampul being the comparative test ampul—and he then broke off the top of the other ampul with his fingers and put that into the right hand side of the device after which he inserted the small glass bubbler tube into the open end of the ampul. The term "single test" as used in these rules we conclude to mean "used only one time." This is borne out by the fact that the ampul was sealed, used one time and then disposed of.

■ Nor do we find any merit in defendant's contention that the failure of the State to show that the defendant had not vomited within fifteen minutes of collecting the air sample affects the admissibility of the breathalyzer test; this for the reason that the appellant was continuously in the custody of Trooper Hale from 1:25 a. m., the time of the arrest, until 2:02 a. m. when the test was administered. At no time while in the trooper's custody did the defendant have anything to drink or smoke. The trooper certified that he complied with the procedures outlined by the manufacturer and the division of health; one of those requirements is that he insure that the individual to be tested has not vomited within 15 minutes preceding collection of the sample of air to be tested. He was not cross-examined on this point nor was there any evidence introduced to contradict his certification. A prima facie showing was therefore made on this issue and absent any evidence to the contrary we cannot find the trial court committed error in permitting the jury to infer that the trooper's certification, unchallenged, met all the standards prescribed for the test's validity.

■ Defendant's contention that the breathalyzer test does not give its results in terms required by the statute is also without merit. While there was prior to the enactment of a new section 564.442 V. A.M.S. by the Seventy-Fifth General Assembly, 3rd Ex.Session (H.B. 19, Laws 1969, p. 111, Sec. 1) a conflict between the statute and the rules of the division of health in this respect, the repeal and enactment of a new section which became effective on September 11, 1970, cured this. The law in effect on the date of this offense—May 29, 1971—computed the percentage of alcohol by volume, i. e., milligrams of alcohol per one hundred milliliters of blood, and that is the manner in which the breathalyzer 900 computed the blood alcohol in this case.

Defendant's final contentions of error are directed to alleged error committed by the trial court in admitting into evidence the testimony of the arresting trooper relative to the speed of the automobile and the intoxicated condition of the passenger in the motor vehicle with the defendant at the time of the charged violations.

Trooper Hale testified that the speedometer on the patrol car he was operating was a "certified police speedometer" which he used to pace the defendant's auto. He made preparation to pace defendant's auto by setting the speedometer at 80 m. p. h. and, after falling in behind defendant's car he sought to maintain the same distance between the two vehicles. For a period of 2 miles he paced defendant's car and at no time did the distance between the two cars diminish. Based upon his experience and on what he observed of the vehicle as he followed it over the 2 mile pace he formed the opinion that it was running in excess of 80 m. p. h.

■ Police officers have been permitted to testify as to their estimate of speed in a traffic case once their experience in estimating the speed of a motor vehicle has been established. Kansas City v. Hill, Mo.App., 442 S.W.2d 89, 92. The qualification of an expert and the question of whether expert opinion upon the subject matter should be permitted are questions which ordinarily should be determined by the trial court in the exercise of a sound discretion. The action of the trial court in admitting expert testimony of this type is reviewable on appeal on the issue of abuse of discretion and the trial court should not be reversed unless the error, if any there is, is shown to be prejudicial. State v. Stevens, Mo., 467 S.W.2d 10, 23 (12); White v. United States, 8 Cir., 399 F.2d 813; 9 Mo.Digest, Criminal Law ■ The record clearly reveals that the trooper has patrolled the highways of this State for almost 13 years in the performance of his duties; that he had experience in checking his speed against radar; and at the time he formed the opinion in this case he had the benefit of the pace and the "certified police speedometer" in the patrol

car. We do not find the admission of Trooper Hale's testimony relative to the speed of defendant's auto an abuse of discretion on the part of the trial court in such matters and we therefore rule this point against the defendant.

Defendant's last point concerns the admission into evidence of testimony by the trooper of observations he made of one Mr. Kessler, the passenger in defendant's auto. This evidence was that the trooper observed the passenger in the auto; that he got out and he noticed that Mr. Kessler was very drunk and was staggering at the scene of the arrest. Defendant's counsel interposed three objections that evidence of the condition of Mr. Kessler was not relevant; twice he was sustained and on the third occasion he was overruled. The one objection which was overruled was directed to the following colloquy:

"Q. Did you notice anything about Mr. Kessler's condition?

MR. TURKEN: Your Honor, I will renew my objection. That's not relevant to this case.

THE COURT: Overruled.

A. Yes, sir, I did.

Q. What did you notice about it?

A. He was very drunk. He was staggering.

Q. Did you see him outside the vehicle?

A. Yes, sir, I did.

Q. Did you see him walk?

A. Yes, sir, I did.

Q. How close did you get to him?

MR. TURKEN: Your Honor, I am going to object again. We're not trying Mr. Kessler here today.

THE COURT: Well, sustained. Proceed on."

It is the defendant's contention that for evidence to be admissible it must be relevant and material to the issues to be determined, and if it has no bearing on the matters in issue it should be excluded. He relies on State v. Edmonson, Mo., 371 S.W. 2d 273. However, in Edmonson, supra, the evidence excluded in a prosecution for driving a motor vehicle without the owner's permission, was the defendant's testimony that he was married, had four children, ages 1, 6, 7 and 11 years, and that his wife was present in the court room. The general rule cited by the defendant is valid, and the ruling in the Edmonson case is correct; but, they are not in conflict with the admission of the evidence complained about in this case.

In State v. Carlson, 325 Mo. 698, 29 S. W.2d 135, the Supreme Court in a prosecution for assault by driving an automobile carelessly and with gross and culpable negligence against the automobile in which the victim was riding, and as a result of the ensuing collision the victim was knocked unconscious and suffered injury to his head and ear, evidence that the deputy sheriff took some intoxicating liquor from a female who was under the influence of intoxicating liquor and who was a passenger in the defendant's car at the time of the offense charged was held to be one of the circumstances surrounding the case and properly admitted over an objection that "he (the defendant) is not charged with drunken driving." The Court, 29 S.W.2d 137(5) said:

"It was one of the circumstances surrounding the case. The only objection in the record to that evidence made by the defendant was this: 'We object to all this because he (defendant) is not charged with drunken driving.' The evidence was not offered for that purpose."

This line of reasoning on the admissibility of the intoxicated condition of passengers is followed in People v. Ellena, 67 Cal.App. 683, 228 P. 389, and is stated in 7 Am.Jur. 2d, Automobiles and Highway Traffic, Sec. 330, p. 873 and in 61A C.J.S. Motor Vehicles § 633(4), pp. 369–370.

In this case now under consideration the evidence of Mr. Kessler's intoxicated condition was one of the circumstances surrounding the case. No objection was lodged by defense counsel to the question directed to what the witness noticed about his condition, nor was any objection made to the answer elicited. At no time did counsel for the defendant request any further relief, nor did he ask that such testimony be stricken and the jury instructed to disregard the testimony. On appeal one cannot base an allegation of prejudicial error concerning admission of testimony to which no objection was made at the time of trial. Nicholas v. Blake, Mo., 418 S.W.2d 188, 191(7). We rule this contention against the defendant.

We affirm.

SMITH and SIMEONE, JJ., concur.