STATE of Missouri, Respondent,

v.

Paul Francis HANRAHAN, Appellant.

No. KCD 26566.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Rehearing Denied June 2, 1975.

Larry O. Denny, Kansas City, George L. DeLapp, Jr., Cameron, for appellant.

Robert B. Paden, Pros. Atty., Maysville, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

The appellant (defendant) was convicted of operating a motor vehicle while in an intoxicated condition (second offense). Section 564.440(2) RSMo 1969, V.A.M.S. He was found guilty by a jury and his punishment assessed at thirty days in the county jail.

Defendant seeks reversal of this conviction on the sole ground that the trial court erred in allowing into evidence, over objec-

tion, the results of a breathalyzer test given to defendant "without first requiring the state to establish that the test was administered in accordance with the methods for operating a breathalyzer promulgated by the state division of health".

The record evidence pertinent to the resolution of this appeal may be briefly summarized.

The defendant had gone to the American Legion Hall in Cameron, Missouri at about 10:00 o'clock p. m. on May 27, 1972. During the evening, he testified, he had consumed five or six beers and left the hall at about 1:30 a. m. on May 28, 1972, driving a 1965 Chevrolet automobile. At about 2:00 a. m., the defendant was observed by Trooper J. W. Martin of the Missouri Highway Patrol, driving northbound on Highway No. 69 in DeKalb County, Missouri. Trooper Martin pulled in behind defendant's car and followed it northbound, during which time he observed defendant's vehicle go into the southbound lane, and at the intersection of Highways No. 69 and 36 it had forced another car off of the pavement. At this time, Trooper Martin stopped the defendant. He asked the defendant for his operator's license and when he seemed to be having difficulty finding it, Martin asked the defendant to get out of the car. Martin then noticed an odor of alcohol about the defendant and that he was very unsteady on his feet. He gave the defendant the Miranda warning and asked him if he would take a breathalyzer test, to which the defendant consented. During this interval, Trooper S. E. East arrived at the scene and then the defendant was taken by Martin to the Missouri Highway Patrol zone office at the City Hall in Cameron in Martin's patrol car, where the breathalyzer test was administered by Trooper East about twenty minutes after the arrest. Martin testified that during the period between the arrest and the test, the defendant had nothing to eat or drink. He stated that at the zone office he observed that the defendant's eyes were bloodshot and watery and that his attitude varied from polite and cooperative to antagonistic.

Trooper S. E. East testified that he was southbound on Highway No. 69 when he observed defendant's car approaching from the opposite direction, partially in the southbound lane. He radioed Trooper Martin, gave him a description of the car, turned his patrol car around, proceeded north, and came upon Martin and defendant stopped at the intersection of No. 69 and No. 36 Highways, when defendant was getting out of the Chevrolet. The defendant informed the troopers that he was not going with them. He was unsteady on his feet, had difficulty finding his operator's license, had an odor of alcohol about him, and his eyes were watery and bloodshot. East administered the breathalyzer test to the defendant about twenty minutes later at the Cameron City Hall.

Trooper East had been with the Missouri Highway Patrol for ten years; he had received a forty-hour course in the use of the breathalyzer, including both laboratory work and actual testing; on May 28, 1972 he was licensed by the Missouri Division of Health to operate the breathalyzer machine; and had actually given 45 or 46 tests during his work as a state trooper. His license was made part of the record at the trial.

Trooper East testified that in administering the test, he worked from an "Operational Check List", as he did in all such tests. This required progressive steps in the use of the machine which Trooper East described in detail to the jury and which procedures he followed in the defendant's test on May 28, 1972. The technical details need not be here stated, except that the end result was that the instrument gave a reading of blood alcohol by weight. He further testified that each breathalyzer machine used by the Missouri Highway Patrol, including the one used by him in the test on defendant at

Cameron, is checked each month to see if it is operating properly and accurately.

All of this testimony as to the procedures employed was admitted without objection. The trial record then discloses the following, during the direct examination of Trooper East:

"Q  (By Mr. Paden) And after you balance (sic) the instrument, did you obtain a reading?

A  Yes, sir, I did.

MR. DELAPP:  Objection, Your Honor. *No proper foundation showing the accuracy of the macine* (sic).

THE COURT:  Overruled.

MR. DELAPP:  Your Honor, May I approach the bench.

(WHEREUPON, the following proceedings were had in the presence of but out of the hearing of the jury:)

MR. DELAPP:  Your Honor, in accordance with quite a few of the Missouri cases starting with St. Louis versus Becker, the Court of Appeals and the Supreme Court have consistently ruled that it is upon the party offering a measuring device in evidence to prove its accuracy *and there is no evidence as to the accuracy of that machine.*

\*      \*      \*      \*      \*      \*

THE COURT:  Objection is overruled.

\*      \*      \*      \*      \*      \*

Q  (By Mr. Paden) You may answer the question?  (sic)

A  Yes, sir.  The reading was 0.23% blood alcohol."  (Emphasis supplied)

■  Also, the defendant's Motion for a New Trial raises three allegations of error, each of which is leveled basically at the accuracy of the machine and the resulting reading.  The alleged error now asserted in defendant's brief, pertaining to the methods for operating a breathalyzer promulgated by the State Division of Health, emerges there for the first time, and, therefore, is not properly preserved for our review. However, both theories of alleged error can and will be dealt with on this appeal.

■  The breathalyzer machine is now considered a reliable machine for the measurement of blood content of alcohol by analysis of exhaled breath (alveolar air) from the lungs and the defendant does not contend otherwise.  Blydenburg v. David, 413 S.W.2d 284, 288[2] (Mo. banc 1967); State v. Becker, 429 S.W.2d 290, 291–293[2] (Mo.App.1968).  The trial position of the defendant (then represented by other counsel than here) was that the *particular* machine used in the test by Trooper East was not affirmatively shown to be in an accurate condition of repair.

There is not one scintilla of evidence in this record, nor even any doubt or inference raised by examination of Trooper East or otherwise, that the machine was not functioning properly [as was the situation in the case of State v. Deimeke, 500 S.W.2d 257 (Mo.App.1973) relied upon by defendant].

■  Nor were the qualifications, by training and experience, of Trooper East to administer the test, ever questioned.  He was licensed by the Division of Health and testified with meticulous care and specific detail as to compliance with the operational checklist which was a part of his training and function.  His competence as an expert in this field was primarily a question for the trial court, unless a clear abuse of discretion appears.  State v. Kramme, 491 S.W.2d 24 (Mo.App.1973).  There was no evidence of any kind that in the exercise of his expertise he did not comply with the regulations of the Division of Health.

At the very least, it is apparent that the state made a prima facie case that the machine was operating properly, was used in a standard manner, and that the results were accurate.  Also, the results obtained were stoutly confirmed by other evidence of defendant's condition.  State v. Hendel, 468

S.W.2d 664 (Mo.App.1971); State v. Barker, 490 S.W.2d 263, 271–272[9] (Mo.App.1973); State v. Forester, 490 S.W.2d 671 (Mo.App. 1973).

The case of State v. Sinclair, 474 S.W.2d 865 (Mo.App.1971), cited by defendant, is clearly distinguishable. There, the person performing the test was shown not to be qualified and the results were stated in terms of alcohol content by *volume* and not *weight,* a standard no longer acceptable under the amended statute.

■ The trial court properly admitted the testimony of Trooper East and the judgment is therefore affirmed.

All concur.