**STATE of Missouri, Plaintiff-Respondent,**

v.

**Harold W. PRESTON, Defendant-Appellant.**

**No. 10612.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 8, 1979.

■■■■■■■■■■■

John D. Ashcroft, Atty. Gen., Steven Scott Clark, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dee Wampler, Wampler & Wampler, Springfield, for defendant-appellant.

H. A. KELSO, Special Judge.

This is an appeal from a conviction wherein the appellant, hereinafter referred to as the defendant, was convicted in a jury waived trial in the Circuit Court of Greene County, Missouri, of driving while intoxicated, third defense. Punishment was assessed at one year in the county jail.

The facts in this case are rather simple and largely uncontroverted.

On April 30, 1976, the defendant Harold W. Preston was driving a 1964 Chevrolet station wagon east on Interstate Highway No. 44 in Greene County, Missouri. A Missouri state highway patrol trooper, Billy Chadwick, by reason of a call from an unidentified citizen, began to follow the driver later identified as Preston. Trooper Chadwick testified that the defendant's car was weaving back and forth so that at times the car's left wheels were completely across the centerline and at other times the right wheels were off on the shoulder. The trooper testified that after pacing the defendant a half to three-quarters of a mile during which time the Preston car was traveling about thirty-five miles per hour, in an area of Interstate Highway No. 44 where the minimum speed limit was forty miles per hour, and that he finally stopped the defendant.

The trooper testified that he had to assist defendant Preston to get out of the car and observed that the defendant was slow of movement, unsteady on his feet, his speech was slurred, and his eyes were bloodshot. The trooper noted a strong smell of alcohol about the defendant and concluded that he was intoxicated and arrested him.

After taking the defendant to the Greene County jail, Trooper Chadwick and Missouri state highway patrol Corporal Earnest McCutchen explained the Missouri implied consent law to the defendant. Corporal McCutchen observed the same indications of intoxication that were testified to by Trooper Chadwick.

At this time, the Corporal, who had a valid Type Two permit, testified that he proceeded to administer a breathalyzer test using methods taught him at the Missouri State Highway Patrol Academy and following the procedures according to a check list outlined by the manufacturer of the machine and approved by the Department of Health. The test disclosed a twenty-two hundredths of one percent by weight of alcohol in defendant's blood.

The trial judge was asked by the state to take judicial notice of § 564.442–1(3), V.A. M.S., the section of the statutes defining what volume of alcohol is evidence of intoxication. There being no objection, the Court took note of the statute.

Although this would appear to be a simple driving while intoxicated case, there was a vast amount of testimony in the case. However, the evidence important to the defendant's contentions of error can be summarized as follows: No alcoholic liquors were found in the appellant's car. He denied having had a drink at the time of his arrest. No "manufacturer's rules" nor "test graph sheet" were used in the testing procedure and the test ampoules used in the test case were destroyed and the test result was allowed.

All of the above evidence comes in the state's case in chief or as a result of either direct or cross-examination.

The only evidence on behalf of the defendant came from Dr. Robert L. Ernst, an Associate Professor of Chemistry at Southwest Missouri State University, who testified that it was possible to save the test ampoule up to a year and a half which would enable a test to be made of the volume of the chemical and the size and quality of the glass ampoule. Dr. Ernst

further testified that the thickness of the glass in the ampoule and the quality of the glass would make a difference in the results of the test.

 The defendant claimed error as follows: He complains that the rules of the Division of Health were not followed in giving the test and that the use of the check list is without authorization. We find no merit in the contention of the accused. The use of the check list appears to be only a procedural matter to insure compliance with the rules laid down by the Department of Health, as mandated by the legislature. No claim was made by the State that the "check list" itself was any evidence of guilt or innocence and that it merely showed a compliance with the statute and rules laid down by the Department of Health. Approval of the use of the check list may be found in *State v. English,* 575 S.W.2d 761 (Mo.App.1978), and *State v. Barker,* 490 S.W.2d 263 (Mo.App.1973).

 The defendant complains that the trial court erred in not suppressing the evidence of the breathalyzer test in that the full information of the test was not made available as required by § 564.441–4, V.A. M.S., because the test ampoule used in the instrument in this case was destroyed after the test was completed on the defendant. It may be important to note, that the defendant does not question the admissibility of the breathalyzer test in general, but only the procedure used in the instant case.

The defendant's claim of the violation of his constitutional's rights, in not preserving the ampoule used in the testing, is not new or novel. The issue has been before the courts of most, if not all of the states, since the United States Supreme Court handed down the landmark case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* held it is a violation of the accused's due process rights for the prosecution to suppress favorable evidence which is material either to the accused's guilt or his punishment. Thus, the defense in cases such as the instant case is that destruction of test ampoules, without defendant being given access to them, is a suppression of evidence which might be favorable to the accused.

Of the fifty states of the United States, only three seem to adopt a view favorable to the defendant's position in this case. The states of California, Alaska and Oregon are those three. However, California, by statute, requires the preservation of the ampoule and further requires that a retestable ampoule be used. Thus, it would appear that when this issue is raised by a defendant only Alaska and Oregon courts find the destruction of the ampoule to be a violation of due process. See *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976); *State v. Michener,* 25 Or.App. 523, 550 P.2d 449 (1976).

A number of states have simply held retesting not to be scientifically feasible or reliable. However, the decision in the case before us need not turn on that question.

The real answer to the defendant's contention is to be found in that *Brady* held the suppressed evidence must be both material and exculpatory.

Does the destruction of the ampoule in the instant case meet that test? We think not. Even if the ampoule had been preserved and found to be faulty this would not have been exculpatory. An exculpatory statement explains away guilt but it does not create innocence. In *Edwards v. State,* 544 P.2d 60 (Okl.Cr.1976), the Oklahoma Criminal Court of Appeals states "A re-examination of the ampoules, if technically feasible, would fall short of producing evidence which could be characterized as material as to the issue of guilt or innocence." 544 P.2d at 64.

In a recent case, *State of South Dakota v. Jeffrey Rand Helmer,* 278 N.W.2d 808 (S.D. 1979), the Supreme Court of South Dakota adopted this same position, saying: "We hold therefore that both the materiality and the exculpatory nature of the ampoule is lacking, and that the failure to preserve the ampoule is not a denial of due process rights. Further, we agree with those courts that have held that the accused's ability to have an independent blood test taken to

challenge the breathalyzer result is suffi-
cient protection of an accused's due process
rights." The South Dakota Supreme Court
cites *State v. Shutt,* 116 N.H. 495, 363 A.2d
406 (1976) and *State v. Cantu,* 116 Ariz.
App. 356, 569 P.2d 298 (1977).

In *State v. Hanson,* 493 S.W.2d 8 (Mo.
App.1973), our St. Louis brethren disposed
of a failure to preserve the test ampoule by
saying at 11: ". . . [T]he uncontra-
dicted evidence was that the test was ad-
ministered in accordance with the rules of
the Division, no prejudice to the defendant
was shown, and we adhere to our ruling in
*Barker* [*State v. Barker,* 490 S.W.2d 263

(Mo.App.1973)] rejecting the same conten-
tion here made."

Therefore, it is the holding of this Court
that the judgment of the trial court is af-
firmed.

All concur.