STATE of Missouri, Respondent,

v.

David Allen BUSH, Appellant.

No. WD 30773.

Missouri Court of Appeals, Western District.

Feb. 4, 1980.

Motion for Rehearing and/or Transfer Denied March 3, 1980.

Application to Transfer Denied April 8, 1980.

387

Roy W. Brown, James R. Brown, Kansas City, for appellant.

Robert B. Paden, Pros. Atty., DeKalb County, Mo., Maysville, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Judge.

Following an automobile accident, appellant Bush was charged by information with operating a motor vehicle in contravention of Section 564.440, RSMo 1969 while in an intoxicated condition, second offense. Trial was to a jury which returned a verdict of guilty and recommended a sentence of twenty-one days in the county jail. The court sentenced Bush in accordance with the verdict and he appeals.

Bush first asserts that the trial court erred in admitting in evidence the results of a chemical breath analysis test performed on him following the accident contending: (a) that evidence of compliance by the officer with regulations governing administration of the test was inadequate and (b) sufficient verification was not made to demonstrate operational accuracy of the testing machine.

The accident occurred on Highway 69 in Cameron when Bush's automobile struck the rear of another vehicle stopped on the roadway preparatory to making a left turn. State patrol officers arrived at the scene ten minutes thereafter and observed that Bush had the odor of alcohol about him, his clothes were in disarray, he was unstable on his feet and was talkative. Bush acknowledged to the officer that he had been drinking and agreed to submit to a chemical test of his breath after first being informed as to the consequences of refusal.

The test was administered at the Cameron police station by Trooper Heseman who held a Type III permit issued by the Missouri Division of Health. Such a permit authorizes the permittee to conduct breathalyzer examinations. At trial Heseman testified that the procedure he followed in administering the test was that set out in a checklist supplied by the Division of Health for that purpose. The checklist used by Heseman in testing Bush and completed by the officer at that time was received in evidence upon Heseman's testimony that the list reflected the actual procedures he had followed.

While it is incumbent on the State, where results of a breath test for blood alcohol are offered, to show that the method of testing has been approved by the Division of Health, *State v. Sinclair*, 474 S.W.2d 865, 868 (Mo.App.1971), the regulations as such and the officer's particular familiarity with them need not be proven in every case. Introduction in evidence of a checklist approved by the Division of Health and testimony that the procedures there defined were followed is a sufficient foundation to allow admission of the results of the test in evidence. *State v. Hanrahan*, 523 S.W.2d 619 (Mo.App.1975); *State v. Hamaker*, 524 S.W.2d 176 (Mo.App.1975); *State v. Milligan*, 516 S.W.2d 795 (Mo.App. 1974). The evidence in the present case followed this pattern and properly qualified the test results for admission as evidence of Bush's state of intoxication.

As to the operational condition of the testing machine, no evidence was offered to show when the machine had last been inspected. The resident officer qualified as a Type II permit holder and assigned to check the machines monthly did not testify. Although Trooper Heseman, a Type III permit holder, is not authorized to test breathalyzer machines, his evidence gave no indication of malfunction of the machine when used to test Bush. The operational checklist attested by Heseman and received in evidence as noted above included certification of the machine's operation as a routine detail verified by the officer in the course of administering the test. No evidence offered in the trial of the case raised any suggestion or inference that the breathalyzer machine operated abnormally.

Bush contends here as he did at trial that the State bears the burden of affirmatively establishing by a current inspection and certification that the breatha-

lyzer device is performing accurately and that the test results are inadmissible absent such proof. Such is not the rule. The breathalyzer machine is generally accepted as a reliable device for measurement of blood alcohol content and when operated by one certified as competent to use it and when the test is administered in accordance with operational regulations promulgated by the Division of Health, a prima facie case for introduction of the test results is made. *State v. Hanrahan*, 621, *supra*.

■ Section 564.442, RSMo 1969 (now Section 577.030) provides for receipt in evidence of test results from chemical analysis of blood alcohol content to determine the state of intoxication of a motor vehicle driver. The conditions for administering the test appear in Section 564.441, RSMo 1969 (now Section 577.020) and require only that the test be given by a law enforcement officer possessing a valid permit issued by the Division of Health and that the test be performed according to the methods approved by the Division of Health. Those conditions assume a properly functioning machine because reliability of the device is the support on which the entire structure of the test result value depends.

■ A contention that the breathalyzer machine was not in proper operating condition can only be validly made if supported by some evidence which at least suggests that a malfunction occurred despite adherence by the testing officer to correct test methods. Thus, in *State v. Deimeke*, 500 S.W.2d 257 (Mo.App.1973), the test results were excluded where the state was unable to show that a defective condition in the machine discovered at a subsequent inspection had not been present earlier when defendant was tested. In this case, all of the evidence was consistent with the proper functioning of the machine and no doubt whatever was cast upon this source of evidence as to Bush's intoxication.

■ Bush also argues that the failure of the officers to preserve the test ampule was a violation of Division of Health rules and that destruction or loss of the sample

prevented him from making an independent test to verify the result. The rule to which Bush refers, 13 CSR 50–140.040(3)(I), does not, as he suggests, require preservation of all test ampules, but only to identify, label and protect, if applicable, any preserved sample. Thus, where it has already been determined that the sample is to be retained, as upon request by the arrestee, it is the duty of the law enforcement officer to serve as custodian of the prospective evidence. No indication appears in this record of any request by Bush that the sample be retained nor did he seek another test by a qualified person as was his right under Section 564.441.3, RSMo 1969 (now Section 577.020.3). No duty to protect the sample therefore arose and the unavailability of the test ampule for examination at trial did not preclude introduction in evidence of the test result. *State v. Preston*, 585 S.W.2d 569 (Mo.App.1979).

From a technical standpoint, the opportunity provided to one charged with the offense of driving while intoxicated for a concurrent, independent test on request affords a superior verification of results to preservation and later rechecking of the original ampule. In fact, it is doubtful if results obtained from a later retesting of the sample have sufficient reliability to be admissible. "Scientists in the field of breath testing are of the general view that it is not feasible to preserve the breath test ampules for a check upon the accuracy of the results reported by the police breathalyzer operator." Moenssens & Inbau, *Scientific Evidence in Criminal Cases* (1978), at 93.

■ As his final point, Bush contends that the court erred in failing to give a verdict directing instruction offered by him, the substance of which was to provide the jury with an alternative of finding Bush guilty of driving while having ten-hundredths of one percent or more by weight of alcohol in the blood. Bush argues that the latter offense—proscribed under Section 564.439, RSMo Supp.1975 (now 577.-012, RSMo 1978)—is a lesser included offense under the charge of driving while intoxicated and that the giving of the proffered instruction was mandatory or was

needed "to cover all the law arising in the instant case."

Bush's brief is violative of Rule 84.04(e) in that the refused instruction is not set forth in the argument portion of the brief. Because this point has been directly and adversely ruled by this court and may therefore be resolved summarily, it is here considered ex gratia in the interest of stressing that the point has no vitality.

In *State v. Blumer,* 546 S.W.2d 790 (Mo. App.1977), the court pointed out that the presence of ten-hundredths of one percent of alcohol is not an element of driving while intoxicated because intoxication is a physical condition provable by opinion evidence. Driving with a specific chemical blood composition, however, can only be proven by chemical analysis. The two offenses do not have the common elements necessary to qualify one as a lesser offense included in the other. To like effect was *State v. Saunders,* 548 S.W.2d 276 (Mo.App.1977) which cited *State v. Blumer, supra,* as controlling.

The judgment and sentence are affirmed.

All concur.