STATE of Missouri, Respondent,

v.

James Roy POWELL, Appellant.

No. WD 31981.

Missouri Court of Appeals,
Western District.

June 9, 1981.

L. R. Magee, Kansas City, for appellant.

Joseph A. Hamilton, William N. Marshall, Harrisonville, for respondent.

PER CURIAM.

The trial court, acting without a jury, convicted James Roy Powell of driving while intoxicated (as proscribed by § 577.-010, RSMo 1978) and imposed a fine of $150.

We affirm.

On October 30, 1979, Powell was stopped by two highway patrolmen at 12:55 a.m. as he was driving a white 1967 Chevrolet pickup truck on U. S. 71 Highway in Cass County. Upon trial, the arresting officer testified that the vehicle seemed to be traveling at an excessive rate of speed, that it was weaving in its lane and that it crossed the center line. After the vehicle was stopped the driver talked with the troopers and showed symptoms of intoxication. He also admitted drinking beer from 7:30 p.m. that evening until the time he was stopped. Powell was placed under arrest for driving while intoxicated. Trooper Carlyle, with Powell's consent, drove the pickup and Trooper Paul took the accused to the sheriff's office where he administered a breathalyzer test. The breathalyzer used for the test was a Model 900.

The trooper who administered the test had worked with machines of this type for about 14 years, and was properly licensed. He testified that he had followed the list of procedures promulgated by the Department of Health when operating the breathalyzer. The checklist he used was admitted into evidence, over objection, as State's Exhibit No. 1. It contained the checklist, as well as the results of the test, and on the back the trooper had signed the "certification of examination" which states that "there was no deviation from procedures outlined by the manufacturer and those approved by the Division of Health," and "to the best of my knowledge this breathalyzer was functioning properly."

*Admissibility of the Breathalyzer Test Results.*

Appellant seeks to have the results of the breathalyzer test excluded from the consideration of the case. To this end, he says that the state failed to prove the accuracy of the test, claiming that: "The State, in this case, has attempted to prove up their machine by opinion testimony of Trooper Paul." The testimony is characterized as opinion testimony and then attacked for lack of factual basis or foundation.

The trooper's testimony is not "opinion" at all. Three times the witness was asked whether the machine was operating properly, and each time the court sustained the objection to the evidence. The witness was then asked, "What would happen if the machine was not operating properly?" The ensuing objection was overruled, but still the witness did not respond to the question. He was asked instead: "Was there any indication that this machine was not functioning properly?", and he answered, "No, sir, there was not." The statement is not an opinion, but rather concerns the witness's sensory perceptions during the operation of the machine. He was not allowed to conclude that that machine was operating properly. He was only allowed to state that there were no physical *indications of* malfunction. *Whitney v. Central Paper Stock Co.*, 446 S.W.2d 415, 419 (Mo.App. 1969); 32 C.J.S. "Evidence" § 546(60) (1964); 2 Wigmore on Evidence, § 664 (1979).

The admission could not have been prejudicial in any event because the state firmly established the proper grounds for the test results by other evidence. Sec.

577.030, RSMo 1978,[1] provides that results of a breathalyzer test shall be "admissible in evidence". Sec. 577.020.2, in turn, provides: "Chemical analysis of the person's breath, to be considered valid under the provisions of Sections 577.020, 577.030 and 577.050, shall be performed according to methods approved by the state division of health by a person possessing a valid permit issued by the state division of health for this purpose." The conditions set forth in Sec. 577.020 for administering the test " . . . assume a properly functioning machine because reliability of the device is the support on which the entire structure of the test result value depends." *State v. Bush*, 595 S.W.2d 386, 389 (Mo.App.1980). Appellant urges that we not follow the holding in *State v. Bush* and its predecessors because the cases are "bad law", but we see, no justification for deviating from these cases.

There is no dispute that Trooper Paul had a valid permit and that he properly followed the checklist approved by the Division of Health. In the absence of evidence that the machine was not functioning properly, the state has laid an adequate foundation. *State v. Hanrahan*, 523 S.W.2d 619, 621–2 (Mo.App.1975); *State v. Barker*, 490 S.W.2d 263, 273 [12] (Mo.App.1973).

*Sufficiency of the Evidence.*

Appellant also challenges the sufficiency of the evidence to establish that he was intoxicated. The breathalyzer results showed .18 percent blood alcohol. Sec. 577.-030.1(3) provides that a test result of .10 percent or greater "shall be prima facie evidence that the person was intoxicated at the time the specimen was taken." Appellant presented no evidence, nor did the state's evidence indicate any circumstances that would rebut the prima facie showing.

Troopers Paul and Carlyle observed appellant's car traveling at a high rate of speed, weaving in its lane and crossing the center line. Appellant admitted consuming eight to ten beers in the five-hour period preceding his being stopped. He was standing uneasy, and his breath smelled of alcohol. These observations alone are sufficient to support a verdict. *City of Trenton v. Lawrence*, 548 S.W.2d 278 (Mo.App.1977). Because the breathalyzer test results are also properly in evidence, appellant's point is clearly without merit. *State v. Laws*, 547 S.W.2d 162, 164 (Mo.App.1977).

The judgment is affirmed.

All concur.

---

1. All statutory references are to RSMo 1978.