Maurice JANNETT, Appellant,

v.

Richard KING, Director, Department of Revenue, Respondent.

No. 48550.

Missouri Court of Appeals, Eastern District, Division Four.

March 5, 1985.

Douglas K. Rush, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, for respondent.

SMITH, Presiding Judge.

Plaintiff appeals from a judgment of the trial court upholding the administrative suspension of his driver's license pursuant to Section 302.505 RSMo 1984 Cum.Supp. We affirm.

Plaintiff was arrested by an officer of the Missouri State Highway Patrol and was given a breathalyzer test. Plaintiff stipulated at trial that the officer had probable cause to stop the plaintiff and to give the test. The breath test showed a level of 0.14% blood alcohol. Based on this test result defendant suspended plaintiff's license.

Section 302.505 authorizes such action where the "alcohol concentration in the person's blood or breath was thirteen-hundredths of one percent or more by weight of alcohol in his blood, based on the definition of alcohol concentration in section 302.-500." Alcohol concentration is defined in 302.500 as the amount of alcohol in a person's blood as shown by "chemical analysis of the person's blood, breath, saliva or urine." Section 577.020 RSMo 1984 Cum. Supp. provides that a person operating a vehicle on the public highways of the state is deemed to consent to chemical tests of his breath, blood, saliva or urine. That section and Sec. 577.026 provide that such tests to be valid "shall be performed according to methods and devices approved by the state division of health by licensed medical personnel or by a person possessing a valid permit issued by the state division of health for this purpose." The division of health is required to "approve satisfactory techniques, devices, equipment or methods to conduct" the tests and to establish standards "as to the qualifications and competence of individuals to conduct analyses and to issue permits ..." Secs. 577.-020.4 and 577.026.2.

Pursuant to this statutory grant the Division of Health has issued Rules for the Determination of Blood Alcohol by Blood, Breath, Saliva and Urine Analysis. 13 CSR 50–140. Those rules provide for Type III permits which authorize the permittee to operate specific breath analysers for the determination of alcoholic content of blood from a sample of alveolar air. 13 CSR 50–140.020. The officer administering the test to plaintiff held a Type III permit from the Division of Health. 13 CSR 50–140.-040(5) requires such a permittee to adhere strictly to the operating procedures approved by the division, to effect no modifications of any breath analyser or its operating procedure, to certify that there has

been no deviation from division procedures and that to the best of his knowledge the breath analyser was functioning properly. The officer administering the test to plaintiff testified to his compliance with each of those requirements and produced as an exhibit his "checklist" reflecting such compliance.

13 CSR 50–140.050 provides the names of approved breath analysers and approved chemical reagents. The breathalyzer and reagent utilized in testing plaintiff were specified in that section of the rules. The operating procedures for breath analysers are found in 13 CSR 50–140.060. The officer testified that he followed those procedures in testing plaintiff.

Plaintiff challenges the results of the analysis on two main fronts: (1) that no evidence was adduced from a Type II permit holder that the breathalyzer was in good working order; and, (2) that no evidence was adduced that the ampoules had been chemically tested to determine their compliance with division requirements. Type II permit holders are authorized to repair, inspect, and calibrate breathalyzers; Type III permit holders are authorized only to operate the instruments.

■ The cases which have arisen which have dealt with the sufficiency of the foundation necessary to admit the results of a breathalyzer test into evidence are criminal prosecutions. Those cases recognize that the provisions of Sec. 577.020 et seq. constitute a legislative standard for admission of such evidence superseding the common law requirements. *State v. Crowell,* 560 S.W.2d 889 (Mo.App.1978) [4, 5]; *State v. Kramme,* 491 S.W.2d 24 (Mo.App.1973) [1, 2]. The provisions of Sections 577.020 and 577.026 deal solely with the testing methods necessary to validate the results of such tests. They have equal applicability whether the proceeding is criminal or civil, as here.

■ Those provisions require that the tests shall be performed (1) according to the techniques and methods approved by the division of health, (2) by persons possessing a valid permit, and (3) using equipment and devices approved by the division. All three of those requirements were met in this case. The officer testified to the methods and techniques used which followed those prescribed by the division. He produced the permit issued to him by the division authorizing him to conduct the test. It was unnecessary for him to additionally establish his qualifications—the permit established that. The equipment and devices used were those approved by the division. This evidence established a prima facie foundation for the test results. *State v. Bush,* 595 S.W.2d 386 (Mo.App. 1980) [3, 4]; *State v. Hanrahan,* 523 S.W.2d 619 (Mo.App.1975) [3]; *State v. Barker,* 490 S.W.2d 263 (Mo.App.1973) [10, 11].

■ The legislature has not required as part of the statutory foundation that the testing authority establish that the instrument is free from defects or that chemicals received from an authorized source are compounded correctly. Plaintiff has not challenged the validity of the legislative enactment. There is no basis for this court to second guess the legislative determination of the reliability of the instruments or the reagents. *State v. Bush, supra,* [5]; *State v. Hanrahan, supra,* [2]. It was not incumbent upon the defendant to establish that the instrument was not malfunctioning or that the ampoules contained the proper chemicals. *State v. Bush, supra,* [6, 7]; *State v. Barker, supra,* [10, 11]. There was no evidence adduced to indicate malfunction or improper compounding. *State v. Powell,* 618 S.W.2d 47 (Mo.App.1981) [2]. In contrast see *State v. Deimeke,* 500 S.W.2d 257 (Mo.App.1973) where the evidence showed malfunction after the test, placing the burden on the state to negate malfunctioning at the time of the test. The test results were properly admitted.

■ Plaintiff also asserts that the trial court erred in taking judicial notice of the regulations of the division of health without requiring their introduction into evidence. Section 536.031(5) RSMo 1978, requires the court to take judicial notice of

the contents of the code of the state regulations *without proof.* There is no need that the regulations contained in CSR be in evidence in view of this statute. *State v. Crowell, supra,* [4, 5]. The plaintiff does not contend that the trial court took judicial notice of the wrong regulations. Those which have been previously cited in this opinion are those applicable to this case and fully support the judgment of the trial court.

Judgment affirmed.

SNYDER and SATZ, JJ., concur.