**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Virgil Henry POWERS,
Defendant-Appellant.**

**No. 13835.**

Missouri Court of Appeals,
Southern District,
Division One.

May 16, 1985.

Tony E. Swetnam, Pros. Atty., Stockton, for plaintiff-respondent.

Samuel J. Short, Jr., Stockton, for defendant-appellant.

GREENE, Judge.

Defendant, Virgil Henry Powers, after waiving jury trial, was court-convicted of the class B misdemeanor of operating a motor vehicle upon a public highway while in an intoxicated condition (§ 577.010 [1]), for which transgression he was fined $500.

On appeal, Powers asserts that the evidence before the trial court was insufficient to sustain the verdict.

In our review, we consider only evidence favorable to the state and the reasonable inferences flowing therefrom, keeping in mind that the trial court is in a much better position than we to judge the credibility of the witnesses. *State v. Davison*, 668 S.W.2d 252, 253 (Mo.App.1984).

The evidence was that at approximately noon on February 9, 1984, Sergeant William Haver of the Missouri State Highway Patrol, while at the Trail Drive-Inn east of Stockton, Missouri, saw a man he later identified as Powers exit from an automobile at that location and urinate on the parking lot. Powers then got back in his car and headed west on Highway 32 toward Stockton, with Haver following him. Powers' car was all over the road, crossing the center line on several occasions, going on the shoulder on both sides of the road, and down into a ditch on the north side of the road. Powers drove to the Lake Stockton Motel. Haver, who had been joined by Larry Wolters, also a high-way patrolman, approached Powers' car and asked Powers to get out of his automobile and show them his driver's license. Powers was confused and unsteady on his feet, his face was red, his eyes were bloodshot, and he smelled strongly of intoxicating beverages. In both Haver's and Wolter's opinions, Powers was intoxicated.

Wolters took Powers to the Cedar County Courthouse and administered a breathalyzer test to him. The test showed that Powers' breath sample contained .19 percent blood alcohol by weight, which is far in excess of the statutory prima facie percentage evidencing presumptive intoxication. (.10 of one percent, § 577.037.1, as amended 1983).

Trooper Doug Shultz, who came to the arrest scene before Powers was taken to the courthouse, testified Powers' speech was slurred, his eyes were bloodshot, he experienced great difficulty in walking, and he "had a strong odor of intoxicants about his person." The foregoing evidence is more than sufficient to sustain the conviction.

Powers' remaining point is that the blood alcohol test results were inadmissible because the test was taken on a machine not maintained in conformity with the rules of the State Division of Health "as required by § 577.020." Subsection (4) of the statute requires that chemical analysis of a person's breath shall be performed according to methods approved by the Missouri Division of Health by a person possessing a valid permit.

Haver, the holder of a Type II–R permit which authorized him to instruct and supervise operators of and to field repair breathalyzers, testified that the Division of Health recommended the breathalyzers be checked every 30–45 days. Haver had checked the machine in question on December 20, 1983, 51 days prior to the testing of Powers. The machine was working perfectly at that time.

---

**1.** Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

Trooper Wolters, who held a Type III permit which qualified him to administer the test, said he followed the steps prescribed on the breathalyzer operational checklist and the procedures approved by the Division of Health and that, in his opinion, the machine was working properly when the test was given to Powers.

 A contention that a breathalyzer machine was not in proper operating condition when a test was given can only be validly made if supported by evidence which at least suggests that a malfunction occurred, despite adherence by the testing officer to correct test methods. *State v. Bush,* 595 S.W.2d 386, 389 (Mo.App.1980). Evidence showing a malfunction *after* the test which favored the suspect is not prejudicial. *City of Cape Girardeau v. Geiser,* 598 S.W.2d 151, 152 (Mo.App.1979). Here, Haver tested the machine again on February 23, 1984, 14 days after the test given Powers. The red warning light would not come on because dirt prevented the piston in the machine's cylinder from making proper contact to turn it on. According to Haver, "it would make a less reading than what actually would be in there." After Haver cleaned the piston, the machine operated perfectly.

There is no evidence of any malfunction of the breathalyzer that caused a reading prejudicial to Powers. Even if there had been, the testimony of the three highway patrolmen, plus Powers' admission at trial that he had consumed three drinks of vodka shortly before his arrest, was a sufficient evidentiary basis for a guilt finding independent of the test results.

Judgment affirmed.

TITUS, P.J., and FLANIGAN, J., concur.