**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Richard G. BURRIS,
Defendant-Appellant.**

**No. 14887.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 20, 1987.

Tony E. Swetnam, Springfield, for defendant-appellant.

Samuel J. Short, Jr., Pros. Atty., Stockton, for plaintiff-respondent.

MAUS, Judge.

Defendant appeals his conviction of the class B misdemeanor of driving while intoxicated. § 577.010. In this judge tried case defendant was fined $200.

The facts are summarized as follows. On September 24, 1985, at approximately 9:00 p.m. Deputy Sheriff Albert Brown was traveling east on Missouri Highway 32. He was behind a car driven by defendant traveling at a speed of about 40 to 45 miles per hour. On the west side of the Sac River bridge defendant pulled off the road. Brown continued on but turned back to see if defendant was experiencing car trouble. Brown pulled in behind defendant's car. He asked if defendant was having car trouble. Defendant said no, he was only eating a sandwich. Brown noticed defendant had red, watery eyes and smelled of alcohol. Brown left. He checked on a car traveling

west without headlights then turned back east. Again he got behind defendant. Defendant was traveling 40 to 45 miles per hour. His car was weaving steadily in its lane although it did not cross the center line or go on the shoulder. Defendant again pulled off the road. Brown did so as well. Brown approached defendant who had raised the car's hood and was adjusting something. Brown again smelled intoxicants. Brown requested defendant to perform field sobriety tests. One test was to lift one leg and stand on the other. Defendant stated he could not do so because of a back injury. Next, Brown instructed him to walk heel to toe, counting the steps. Although he was "wobbly" on his feet, the defendant performed this test. The final test consisted of Brown moving an ink pen from side to side and asking defendant to follow it with his eyes. Defendant's eyes twitched and he could not follow the pen smoothly. Brown arrested defendant and took him to the sheriff's office for a breathalyzer test.

On May 15, 1985, Deputy Sheriff Brown had been certified to administer tests on the Breathalyzer 900. On September 12, 1985, he qualified for testing on a BAC Verifier. His permit was dated September 12, 1985. Brown had not received the document by September 24, 1985.

At 9:30 p.m. Brown prepared a BAC Verifier to test the defendant. He pushed the "run" button and waited for the traveling dots to cease flashing, indicating the machine was ready. When the dots did not stop, Brown became concerned and requested help. After waiting about two minutes he realized he had forgotten to push the "run" button a second time as required for operation of the machine. He did so and the machine functioned normally. Defendant's blood alcohol content was .11.

Defendant offered an explanation for each incriminating fact testified to by Deputy Brown. He stated he had one 12-ounce can of beer at 6:00 p.m. and another at 8:30 p.m. He decided to drive from his home in Fair Play to Stockton to get a sandwich. The car he chose to drive was a 1974 Plymouth which had 115,000 miles on it. Defendant testified the car handled "loosely" and that was why it weaved. It was also overheating so he stopped to let it cool and to eat a sandwich.

Four years before the arrest he had sustained a back injury. In 1984 he had had back surgery. He suffered from an inherited illness known as "femoral tremors" which caused his eyes to twitch. Because of bronchial asthma, defendant had to take pills and two kinds of spray to open the lungs. An expert testified these medications would cause a faster absorption of alcohol into defendant's system. The expert concluded defendant's blood alcohol content could not have been more than .08 at the time of the test.

Defendant raises two points on appeal. The first point asserts error in admitting the breathalyzer results for two reasons. The first reason is that the officer did not possess a Type III permit authorizing him to operate the BAC Verifier. Section 577.-020.3 requires a valid test be performed "by a person *possessing* a valid permit issued by the State Division of Health for this purpose." (emphasis added). 13 CSR 50–140.020(6), effective January 14, 1983 provides: "No approval or certification shall become effective until a permit has been *issued* to the applicant by the Division." (emphasis added). "[P]ermits issued by the Division of Health by persons qualified to perform chemical testing of blood alcohol" are prima facie evidence the person is qualified to administer the test. *Vance v. McNeill,* 711 S.W.2d 531, 532 (Mo.App.1986).

■ Defendant maintains that the test was not conducted by one *possessing* a valid permit because Brown did not have physical possession of a permit on September 24, 1985. Deputy Brown had completed the appropriate training on the BAC Verifier on September 12, 1985. The type III permit authorizing him to operate such machine issued by the Division of Health was dated September 12, 1985. The regulation states the permit is effective when issued. The fact that a document was not in Deputy Brown's hands did not mean he

*did not "possess" such authorization.* *Vance,* the regulation and the statute indicate it is the training on the equipment and the date of issuance of the proper permit that authorizes one to perform the test. The first contention is denied.

The defendant also asserts error in admitting the breathalyzer test results in evidence because "a proper foundation was not laid to indicate the breath analyzer was functioning properly at the time that the test was administered when the officer testified he believed the machine was malfunctioning."

*State v. Powers,* 690 S.W.2d 859, 861 (Mo.App.1985) states:

A contention that a breathalyzer machine was not in proper operating condition when a test was given can only be validly made if supported by evidence which at least suggests that a malfunction occurred, *despite adherence by the testing officer to correct test methods. State v. Bush,* 595 S.W.2d 386, 389 (Mo.App. 1980). (emphasis added)

As noted, Brown had to push the run button twice before the machine functioned properly. To support his contention the defendant cites the following testimony of Brown.

Q. You thought you punched the run button?

A. That is correct.

Q. Do you know today whether you did or did not—

A. No, I did not.

Q. You might have punched the run button and the machine malfunctioned?

A. That's possible, yes.

Q. If you did, the response you received from the machine was not a normal response?

A. Yes, I would assume so.

Defendant's argument does not reflect all of Brown's testimony. That testimony also included the following.

Q. So, you didn't do it properly or the machine was malfunctioning was it not?

A. No, it was done properly.

Q. I beg your pardon?

A. It was done properly. My error, I forgot to press it the second time. It was done properly.

Other than defense counsel's speculative possibility posed to Deputy Brown, there is no evidence the machine could have even temporarily malfunctioned. The overall thrust of Brown's testimony is that when he pushed the "run" button the second time, the machine functioned normally. No evidence supports defendant's contention of a malfunction rendering the test inadequate. This point is denied.

Defendant's second point is that defendant's conviction was against the weight of the evidence, there was no evidence of intoxication and all of his behavior was consistent with a reasonable hypothesis of innocence. On review, we note the better position of the trial court to judge the credibility of witnesses and to view evidence favorable to the state. *State v. Powers,* supra. The trial court was entitled to and did reject the defendant's explanations and the expert's conclusion. *State v. Isom,* 660 S.W.2d 739 (Mo.App.1983).

In addition to the breathalyzer test results, there was other substantial evidence of defendant's intoxication. Defendant was weaving in his lane. Defendant's eyes were red and watery. He smelled of intoxicants. He could not perform one of the field sobriety tests. Such indications of intoxication have been held to be sufficient to support the verdict. *State v. Jackson,* 643 S.W.2d 74 (Mo.App.1982); *State v. Powell,* 618 S.W.2d 47 (Mo.App.1981); *State v. Laws,* 547 S.W.2d 162 (Mo.App. 1977). The second point is denied and the judgment is affirmed.

HOGAN and FLANIGAN, JJ., concur.

PREWITT, P.J., dissents and files dissenting opinion.

PREWITT, Presiding Judge, dissenting.

I respectfully dissent. The majority opinion eliminates from § 577.020.3, RSMo 1986, and 13 CSR 50–140.020(6), the requirement that to be valid a chemical test for alcohol content be performed by a per-

son to whom a valid permit has been "issued". Deciding whether such a permit should be required is not our function. We should give the statute and regulation their plain and ordinary meanings. *State v. Cummings,* 724 S.W.2d 316, 317 (Mo.App. 1987). They obviously require that a permit be "issued" to the person administering the test before the test is conducted.

I agree that the officer did not have to have the permit in his physical possession, but absent proof that it was issued, defendant is correct that the officer did not "possess" a valid permit. If the permit had been "issued" then whether he had it or ever received it would be immaterial. Once the permit has been issued, then I believe the officer possesses it even though he has not yet received it. However, there was no evidence here that the permit had been issued, so defendant is correct that the officer did not possess one.

"Issued" means "sent out". *Zimmer v. Susquehanna County Planning Commission,* 14 Pa.Commw. 435, 322 A.2d 420, 421–422 (1974). See also *Baker v. Sisk,* 1 F.R.D. 232, 235 (E.D.Okla.1938) (summons not "issued" when prepared but when mailed.) *Papin v. Imes,* 19 Ohio Op.2d 114, 184 N.E.2d 269, 270 (1961) ("issued" means to send out officially or cause to go forth); *Ross v. American Radiator and Standard Sanitary Corp.,* 507 S.W.2d 806, 809 (Tex. Civ.App.1974) (execution not "issued" on preparation by clerk but on delivery to proper officer).

The state had the burden to show that the chemical test was administered by a person to whom a valid permit had been issued. It did not do so. There might be cases where the date of a document would be prima facie its issue date, but here the evidence strongly indicates otherwise. The permit in evidence, although dated September 12, 1985, had not been received by Deputy Brown on the 24th of September, 1985, the date of the test. Had it been mailed or otherwise left the Division of Health on September 12, 1985, he should have received it by then. Under these circumstances, the state did not prove beyond a reasonable doubt that the permit had been issued by September 24, 1985.

To say that because Brown "had completed the appropriate training" on the machine and a permit was dated September 12, 1985, is sufficient, changes the requirement by statute and regulation that the permit must be "issued". Not requiring the state to prove that the permit was "issued" is "plain judicial legislation" which we are cautioned not to do. See *Poling v. Moitra,* 717 S.W.2d 520, 522 (Mo. banc 1986).

For this reason I think the evidence of the chemical test should not have been allowed. Absent that evidence there was a failure of proof to establish beyond a reasonable doubt that the defendant was operating the vehicle while intoxicated. I would reverse the judgment and order defendant discharged.